13407

PEEPLES v. SOUTH CAROLINA POWER CO. *ET AL.*

(164 S. E., 605)

Messrs. *Brown & Bush* and *T. M. Boulware,* for appellant,

Messrs. *Harley & Blatt,* for respondents,

May 12, 1932.

The opinion of the Court was delivered by Mr. John I. Cosgrove, Acting Associate Justice.

By this complaint in this cause plaintiff seeks to hold defendants liable in damages for losses resulting from the destruction by fire of his residence and its contents in the Town of Barnwell. The gravamen of the complaint is the alleged negligent, reckless, wanton, and willful failure of defendants to furnish a sufficient and adequate water pressure for fire extinguishment at the time of the fire.

Defendants demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. From the order of Circuit Judge J. Henry Johnson, sustaining the demurrer, comes this appeal.

Plaintiff's loss occurred in October, 1929. The complaint alleges, in substance, that prior to February 18, 1929, the Town of Barnwell had erected, maintained, and operated within its limits a waterworks system, including a supply of water, water means, hydrants, boiler, pump, and all necessary machinery and supplies adequate to supply water for all purposes, including the extinguishment of fires for itself, its inhabitants, taxpayers, and freeholders, which waterworks system and service were sufficient to give the town and its inhabitants reasonably adequate protection against fire, together with a favorable rate of fire insurance; that the waterworks system so established was constructed and maintained in consequence of the issuance of bonds by the town for that purpose, for the payment of which the taxpayers and freeholders were liable; that on February 18, 1929, the Town of Barnwell entered into a lease of its entire waterworks system with the South Carolina Power Company; that the South Carolina Power Company and its codefendant there-

after undertook to operate said waterworks system and exercise all the rights, privileges, and benefits arising under the lease; that on the 10th day of October, 1929, the residence of plaintiff caught fire, and that, before the building was in danger of being destroyed, the fire having originated in the kitchen thereof, the fire department of the Town of Barnwell had reached his residence with equipment attached to nearby hydrants sufficiently close to enable the extinguishment of the fire before it had appreciably damaged any part of the residence or personal property therein located, if the defendants at that time had furnished sufficient water pressure to extinguish the fire; that at the time the fire hose was connected to the hydrants defendants had practically no pressure on the water; and that, while defendants were firing up the boiler at its firehouse, in order to make steam to furnish the pressure, the residence and its contents were destroyed.

The lease between the town and the company is set out in the complaint, as follows:

"This contract made by and between the South Carolina Power Company, as a corporation duly organized under the laws of South Carolina, party of the first part, hereinafter referred to as the Power Company, and the Town of Barnwell, a municipal corporation created under the laws of the State of South Carolina, party of the second part.

"Witnesseth, for and in consideration of the sum of ($1.00) and other valuable consideration, receipt of which is hereby acknowledged, the party of the first part and the party of the second part, agree to enter into the following contract:

"The Town of Barnwell agrees to lease its complete Municipal Waterworks System to the South Carolina Power Company, its Successors and Assigns, for a period of thirty (30) years with the understanding that this lease may be terminated at any time, upon six (6) months written no-

tice from the Town of Barnwell that it desires to terminate said lease.

"As compensation for the use of said Waterworks System the South·Carolina Power Company agrees to furnish all present fire hydrant service and all water used by the Town of Barnwell, without cost to the Town. The Power Company agrees to furnish water to the individual consumers at the present schedule of rates now in effect in the Town of Barnwell, except that 4,000 gallons will be allowed as a minimum and other rates to be in same proportion except that it is agreed by both parties that the water rates charged in this contract are to be under the supervision of the South Carolina Railroad Commission or other State Commission vested with such power.

"The Power Company agrees to install the following equipment necessary to maintain present fire insurance rates now in force in the Town of Barnwell with the understanding that the Town of Barnwell will reimburse the Power Company for 50 per cent. of said disbursements at the expiration of this lease; viz.: A small motor driven pump, to keep tank full during normal conditions and a motor driven Centrifugal Pump having equal or greater capacity than present fire pump, with valves so arranged that in case of fire the tank can be cut off and this pump, will pump direct into the main, so as to increase the pressure ·up to present standard.

"The Power Company agrees to maintain water system up to present standard but any improvements or extensions to water system are to be made only with the approval of the Town of Barnwell and are to be paid for by Town of Barnwell with the exception of small connections for new customers within one hundred feet of established water main.

"The Town of Barnwell agrees to pass the necessary ordinances covering rules and regulations for the operation of the waterworks system in the Town of Barnwell, which in their opinion are just and reasonable."

The complaint charges the following delicts and breaches of duty (characterized as negligent, reckless, wanton, and willful) as the proximate causes of plaintiff's loss:

"(1) In that the defendants had failed to furnish fire hydrant service equivalent to that furnished by the Town of Barnwell at the date of the said contract.

"(2) That the defendants had failed to install a motor driven centrifugal pump having equal or greater capacity than the fire pump maintained by the Town of Barnwell at the said Power House on the date the said contract was entered into, with valves so arranged that in case of fire the tank could be cut off and the pump would pump direct into the main, so as to increase the pressure up to the standard maintained by the Town of Barnwell at the date of the said contract.

"(3) The defendants failed to maintain the said water system up to the standard at which it was maintained at the date of the said contract.

"(4) That the defendants failed to perform each and every duty and obligation, at the time of the said fire, imposed upon them by the said contract and the facts herein pleaded.

"(5) That the defendants failed to have sufficient steam in the boiler at the said time to furnish sufficient water pressure in said water mains and hose to enable said fire department to extinguish said fire before it had reached and consumed said residence and personal property.

"(6) That the defendants and each of them failed to furnish sufficient pressure upon the water in the pipes of the said water system to cause the water to flow from the said hydrants and hose with sufficient force to reach and extinguish the said fire before it had reached and destroyed the main part of the said building and personal property.

"(7) That the defendants failed to furnish reasonably sufficient fire protection water service at the time and place herein mentioned."

The trial Judge was of the opinion that the cause of action alleged in the complaint was not maintainable under *Ancrum v. Camden Water, Light & Ice Co.,* 82 S. C., 284, 64 S. E., 151, 156, 21 L. R. A. (N. S.), 1029, and *Cooke v. Paris Mountain Water Co.,* 82 S. C., 235, 64 S. E., 157. He cited, also, *German Alliance Ins. Co. v. Home Water Supply Co.,* 226 U. S., 220, 33 S. Ct., 32, 57 L. Ed., 195, 42 L. R. A. (N. S.), 1000, 38 A. L. R., 505; and *Moch Co. v. Rensselaer Water Co.,* 247 N. Y., 160, 159 N. E., 896, 62 A. L. R., 1205.

He felt foreclosed of an independent opinion under the foregoing decisions of this Court; suggesting, however, that, were the question an open one, his conclusion might have been different.

In the *Ancrum case,* the City of Camden gave the water company a franchise for the exclusive operation of a water-works system for a long term of years, by the terms of which the water company was obligated to erect, at its expense, the plant, lay the pipes, establish and maintain the hydrants, and furnish a sufficient water pressure for the extinguishment of fires. In addition, the water company was privileged and obligated to, furnish water to the individual inhabitants for private purposes for the regular charge to such inhabitants. The contract provided penalties for temporary failure to keep the hydrants in repair, and for the termination of the franchise upon willful failure, neglect, or refusal of the company to perform its obligations thereunder.

This Court held that the liability or nonliability of the water company to the individual inhabitant for his fire damage resulting from a failure to furnish adequate pressure for fire extinguishment depended upon the construction of the contract between the city and the company, that is, whether such liability was intended by the contracting parties or was fairly within their contemplation when the contract was made.

Upon familiar principles, namely, the presumption that parties contract for their own benefit, and not for that of others not parties to the contract, the consideration that the sum paid by the city for each hydrant was on its face utterly inadequate to meet the expense of furnishing the water and to afford compensation for the enormous risk of liability to individual property owners, and the further principle that, when parties themselves stipulate in the contract the consequences of a breach thereof, such stipulation, if reasonable, is controlling and excludes all other consequences, this Court held that the contract was not construable to contemplate liability to individual inhabitants.

It said: "We conclude that the obligations and liabilities of the parties are limited by the contract, and that the defendant did not contract to pay the losses of all the citizens of the City of Camden by fires which would have been extinguished if it had not neglected to comply with the contract."

The *Ancrum case,* however, expressly recognized the power of a municipality to contract with a water company that it· would be liable to its inhabitants, as individuals, for fire losses due to the company's neglect to keep an adequate water supply, and that individual inhabitants, injured by such neglect, could sue to enforce such liability.

At page 295 of 82 S. C., 64 S. E., 151, 155, we find: "Having reached the conclusion that the City of Camden could contract with the defendants that it would be liable to its inhabitants, as individuals, for fire losses due to the defendant's neglect to keep an adequate water supply, and that the plaintiff could sue on such a contract, the pivotal question recurs whether the City of Camden did make a contract imposing that liability on the water company."

The pivotal question, likewise, in this appeal, is whether the contract herein between the power company and the Town of Barnwell was intended by the parties to, and did, impose liability upon the power com-

pany to individual inhabitants for fire losses sustained through the breach by the power company and its codefendant of the obligations imposed by the contract in reference to the furnishing of adequate water pressure for fire extinguishment.

In the instant case, the facts in the light of which the contract must be construed are materially different from those which entered into and compelled the construction of the contract arrived at in the *Ancrum case.*

The Town of Barnwell, by the issuance of its bonds, had constructed the waterworks system, laid the pipes, established the hydrants, and had undertaken the operation of the waterworks, all at considerable outlay and expense to it and ultimately to its inhabitants.

The waterworks were constructed by the town under statutory authority (Section 7280 of the 1932 Code), which authorized cities and towns to establish and maintain such waterworks "for the use and benefit of such cities and towns and the inhabitants thereof."

In the *Ancrum case,* on the other hand, the water company constructed the waterworks system with its own capital, securing the franchise to sell water to consumers for a charge, by the agreement to furnish water to the city at a nominal rate.

Here, the power company got the privilege of using the waterworks system, constructed by the town with the funds obtained from the bond issue for that purpose, in which the power company had no investment at all, to sell water for a profit to the individual consumers. The consideration for the use of the works for such purpose was its agreement to furnish proper fire hydrant service and water pressure for fire extinguishment.

Moreover, in the lease of its property, the Town of Barnwell stipulated for, and the power company agreed to furnish, all "present" fire hydrant service; the installation of certain equipment necessary to maintain "present" fire in-

surance rates by keeping the water pressure at least equal to the pressure maintained by the town; and maintenance of the water system and pressure up to "present" standard.

Another point of difference between this contract and that in the *Ancrum case* is that the contract in the instant case does not expressly provide the consequences of a breach, so as to exclude other consequences.

In the light of the allegations of the complaint herein, we do not regard the principle that parties ordinarily are presumed to contract for their own benefit controlling in the construction of the contract here presented. On the contrary, the considerations referred to tend strongly to the conclusion that the parties, in making the contract, may fairly be said to have contemplated the assumption by the power company of liability to the individual inhabitants of the town for its breach of the obligations imposed upon it under the contract in reference to the maintenance of the fire protection stipulated for. This conclusion would seem to be strengthened by the fact that the contract nowhere specifically limits the liability of the power company in this respect.

Nor can the alleged inadequacy of rental paid by the town to the power company for hydrant service influence as a matter of law the construction of the contract in favor of the power company. The fire hydrant service, according to the contract and the complaint, was practically the sole compensation to be paid by the power company for the use of the waterworks and system.

Aside from the furnishing of such fire protection, the operation of the plant was for the company's own profit. In the *Ancrum case* the water company paid for its franchise in the cost of the erection and maintenance of the plant and system. In such a case this Court held that the question of adequacy of rental or compensation from the municipality might be an important element in the construction of the contract.

Where, however, the waterworks are established under the statute by the municipality with its capital, and where the contract or lease to a private company does not stipulate the consequences of the breach by the company, and particularly where the sole compensation to the town for the use of the system erected and paid for by it is the agreement to furnish sufficient and efficient fire protection, the contract should specifically exclude and limit the liability to the individual inhabitants, or such liability may be deemed to exist.

In any event, in cases like the instant, where there is an absence of limitation upon the company's liability, coupled with considerations which may fairly tend to show an intention that the liability in question should exist, the contract is rendered ambiguous and uncertain. Its construction then becomes a question of fact for the jury under well-established principles.

"As a general rule, contracts are to be construed by the Court; but where a contract is not clear, or is ambiguous and capable of one or more constructions, what the parties really intended, as a matter of fact, should be submitted to a jury." *Wheeler v. Ins. Co.,* 125 S. C., 320, 118 S. E., 609, 610.

"But if it were doubtful whether the language of the contract, considered alone, would support the interpretation for which defendants contended, then it would be the duty of the Court, in conformity to an established canon of construction, to inform itself of the circumstances which surrounded the parties at the time and to consider the preliminary negotiations leading to the execution of the contract, not for the purpose of allowing any variation or contradiction of its terms, but to the end that the language employed be so construed as to give it such effect, and none other, as the parties intended at the time the contract was made. * * * When the ambiguity arises, not upon a consideration of the words of the instrument as viewed in themselves but upon

these words when applied to the object described, or where a resort to extrinsic facts will tend to remove the obscurity in meaning of the language employed, the question of interpretation should be submitted to the jury, under proper instructions." *Breedin v. Smith,* 126 S. C., 346, 120 S. E., 64, 69.

The contention is pressed by respondents, however, that the presence in the agreement of the provision that the town may terminate the lease upon six months' written notice is parallel to the provisions of the contract in the *Ancrum case* and fixes the consequences of its breach.

This provision is not stated in the contract to be intended for such purpose. It can hardly be regarded as expressly excluding the liability here under consideration, even if its incorporation in the agreement were solely to enforce performance on the part of the company.

Moreover, its efficacy as a penalty or remedy for the particular breach of the contract under consideration would appear to be exceedingly doubtful. Continued failure to furnish adequate pressure for fire extinguishment might produce a notice of cancellation of the contract by the town. During the six months intervening between the date of this notice and surrender of the property, the inhabitants, for whose benefit the fire protection was intended, would be remediless and unprotected against the dangers incident to the very breaches that necessitated the termination of the contract. In the *Ancrum case,* it was stated that stipulations of the consequences of a breach would be controlling, if reasonable. The provision here referred to, in the light of the foregoing considerations, can hardly be held reasonable, if it excludes any other consequence of a breach than that suggested by respondents.

It is our opinion that the contract under consideration cannot be construed as a matter of law to relieve the power company of liability to individual inhabitants for fire losses

which may be sustained by them as the result of a tortious breach of the obligations imposed by the contract in reference to furnishing hydrant service and water pressure for fire protection. The contract being ambiguous and uncertain in this particular, its construction is for the jury.

The order of the Circuit Court sustaining the demurrer is reversed, and the cause remanded with leave to respondents to answer the complaint within twenty days from the date of the filing of the remittitur herein.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN did not participate on account of illness.