72 F.3d 126
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 BOWMAN TRANSPORTATION, INCORPORATED, Plaintiff-Appellee,
v.
Clara HEINSOHN; Anne Louise Heinsohn, Defendants-Appellants.
 No. 94-2301.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 28, 1995.
Decided Dec. 11, 1995.
 
 ARGUED: William Benson Darwin, Jr., James C. Cothran, Jr., HOLCOMBE, BOMAR, COTHRAN & GUNN, P.A., Spartanburg, South Carolina, for Appellants. Richard Ashby Farrier, Jr., NELSON, MULLINS, RILEY & SCARBOROUGH, Charleston, South Carolina, for Appellee. ON BRIEF: N. Keith Emge, Jr., NELSON, MULLINS, RILEY & SCARBOROUGH, Charleston, South Carolina, for Appellee.
 Before POWELL,* Associate Justice (Retired), United States Supreme Court, sitting by designation, and MURNAGHAN and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 At issue is the interpretation of a structured settlement agreement entered into by the surviving family of a man killed in a traffic accident, the trucking company whose truck was also involved in the wreck, and the company's liability insurer. Under the agreement,[1] the survivors[2] were to receive a series of payments, some of which were to be funded through the purchase of an annuity by the insurer. After nearly ten years of paying in full, the annuity company, Executive Life Insurance Co. ("Executive Life"), encountered financial difficulties and partially defaulted on the annuity payments. Although the Heinsohns opted into a rehabilitation plan guaranteeing at least some portion of the installments from Executive Life,[3] they demanded that the trucking company, Bowman Transportation, Inc. ("Bowman"), make up the deficiency.[4] Maintaining that the terms of the agreement placed sole financial responsibility for the payments squarely on its insurer, Bowman invoked diversity jurisdiction to seek clarification of its payment obligations in federal court. The district judge found that the settlement agreement clearly and unambiguously relieved Bowman of liability for the shortfall and granted the company's motion for summary judgment.
 
 
 2
 General principles of contract interpretation under South Carolina law warrant quick review. Generally, the construction of a written instrument is a question of law for the court. Campbell v. Bi-Lo, Inc., 392 S.E.2d 477, 479 (S.C.Ct.App.1990). The court's function is to ascertain and give effect to the intention of the parties, looking first to the instrument itself. Id. In a carefully prepared contract, the words are presumed to have been used deliberately and intentionally. McPherson v. J.E. Sirrine & Co., 33 S.E.2d 501, 510-11 (S.C.1945). The court should give the language its "plain, ordinary, and popular sense" meaning and consider the entire contract, not just one or two phrases in isolation. Bruce v. Blalock, 127 S.E.2d 439, 442 (S.C.1962). If the language of the contract is plain and capable of legal construction, "that language alone determines the instrument's force & effect" and parol evidence is inadmissible. Jordan v. Security Group, Inc., 428 S.E.2d 705, 707 (S.C.1993). If, on the other hand, the agreement is ambiguous or capable of more than one interpretation, then its construction is a question of fact. Skull Creek Club Ltd. Partnership v. Cook and Book, Inc., 437 S.E.2d 163, 165 (S.C.Ct.App.1993). In such cases, parol evidence is admissible to help discern the meaning of the ambiguous language and the intentions of the parties. Mattox v. Cassady, 344 S.E.2d 620, 622 (S.C.Ct.App.1986).
 
 
 3
 Turning to the contract at hand, we review the district court's grant of summary judgment de novo and find the relevant contract provisions clear and unambiguous. Section 3 of the settlement agreement clearly sets forth the payments to be made by Bowman and its insurer to the Heinsohns in exchange for settlement of their claims and disputes. Paragraphs 3.a. through 3.d. provide that the Heinsohns will receive an immediate lump sum payment of $225,000, which was paid, the discharge of a worker's compensation lien, and a series of periodic payments. Paragraph 3.e. compels only the insurer to purchase an annuity contract to provide a source of funds for meeting the future payments detailed in the earlier paragraphs. Paragraph 3.f. specifies that the insurer will be the sole owner of the annuity and have all rights of ownership. Finally, Paragraph 3.g. provides that the Heinsohns will "rely solely" on the insurer for the future payment obligations.
 
 
 4
 The text of Section 3 is clear and fairly susceptible to only one interpretation. More specifically, Paragraph 3.g. explicitly places liability for defaulted payments solely on the insurer. The provision is unambiguous, logical, and consistent, in light of the earlier paragraphs establishing the insurer as the sole owner of the annuity funding those obligations. Under the maxim of contract interpretation that the expression of one thing excludes another,[5] the parties created the negative implication that the Heinsohns would not look to Bowman as a guarantor of the payments by expressly stating in Paragraph 3.g. that they agreed to turn only to Bowman's insurer in the case of missed payments. The conclusion is further supported by the parties' deletion from the agreement of a paragraph expressly providing that Bowman and its insurer shared the risk of default.
 
 
 5
 Finally, because the settlement agreement is fully integrated as well as clear and unambiguous, parol evidence cannot be used to vary its terms. Even if the parties had agreed to include Paragraph 3.g. solely for tax purposes as the Heinsohns contended and proposed to demonstrate, that motivation fails to change its substantive meaning. The insertion of language for tax purposes, even if it is mere boilerplate, has a substantive effect on the contract. Amoco Rocmount Co. v. Anschutz Corp., 7 F.3d 909, 919 (10th Cir.1993), cert. denied, 114 S.Ct. 1057 (1994). Thus, the provision must be construed as any other contractual language.
 
 
 6
 For the above reasons, we conclude that the plain language of the settlement agreement is clear and unambiguous, and must be given effect as written. Regardless of the motivation behind it, Paragraph 3.g. explicitly frees Bowman from liability for default on the annuity payments.[6] "The [c]ourt's duty is to enforce the contract made by the parties, regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully."[7] Jordan, 428 S.E.2d at 707. Thus, the district court's order granting summary judgment to Bowman is
 
 
 7
 AFFIRMED.
 
 
 
 *
 Justice Powell heard oral argument but did not participate in the decision of this case. The decision is filed by a quorum of the panel pursuant to 28 U.S.C. Sec. 46(d)
 
 
 [1]
 The settlement agreement was accompanied by a consent order approved by a South Carolina state court judge. Both were executed on November 10, 1982
 
 
 [2]
 John Richard Heinsohn left as survivors a wife, Clara H. Heinsohn, and a daughter, Anne Louise Heinsohn (hereinafter the "Heinsohns")
 
 
 [3]
 The rehabilitation plan approved by the Los Angeles Superior Court on August 13, 1993, fixes the Heinsohns' recovery at about 55% of the value of the annuity contract
 
 
 [4]
 Bowman's liability insurer, Carriers Insurance Company, had been declared insolvent and ordered liquidated in January 1986
 
 
 [5]
 South Carolina courts have recognized the maxim applicable here, which is expressed by the Latin phrase expressio unius est exclusio alterius. See Matthews v. Nelson, 401 S.E.2d 669, 671 (S.C.1991)
 
 
 [6]
 Although the consent order omits the specific provisions regarding the annuity contract, it merely creates a legal obligation for Bowman and its insurer to pay the Heinsohns. It does not modify the terms of the settlement agreement
 
 
 [7]
 Our decision does not leave the Heinsohns empty-handed as they are guaranteed some payment under the rehabilitation plan