THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Stephen Atherton, On behalf of himself and all others similarly situated,
Appellant,
v.
Tenet Healthcare Corporation and AMISUB of South Carolina, Inc.,
Respondents.
 
 
 

Appeal From York County
 Paul E. Short, Jr., Circuit Court Judge

Unpublished Opinion No.  2005-UP-362
Heard May 11, 2005  Filed May 25, 2005

AFFIRMED

 
 
 
Chad McGowan and Kevin Sitnik, both of Rock Hill, and Gordon Ball, of Knoxville, for Appellant.
Daniel J. Westbrook and Alice V. Harris, both of Columbia, for Respondents.
 
 
 

PER CURIAM:  This is a class action[1] arising out of the alleged overcharging by Tenet Healthcare Corporation and AMISUB of South Carolina, Inc. (collectively Respondents), for medical services rendered at Piedmont Medical Center.  The court granted summary judgment to Respondents on Athertons claims of breach of contract, unjust enrichment, implied contract for value, and his request for an injunction.  We affirm.
FACTUAL/PROCEDURAL BACKGROUND
In 1980, York County, the Trustees of York General Hospital, American Medical International, Inc., and AMISUB of South Carolina, Inc.
entered into a contract for American Medical[2] and AMISUB to lease York General Hospital and to construct a replacement hospital.[3]  In section 16.15 of the 1980 contract, it specifies [t]here are no third party beneficiaries of this Agreement.  Both parties agree Atherton was not a party to this contract.  
The contract was subsequently modified on seven different occasions, through seven addenda to the 1980 contract.  In August 1995, Respondents and York County executed the Sixth Addendum.  The Sixth Addendum provided in part that in order to ensure the continuing provision of high quality, cost effective healthcare to the citizens of York County without cost to York County, [Respondents] have proposed to undertake various obligations expanding upon, or in addition to, those contained in [the 1980 Agreement].  This addendum also contained the following provisions relevant to this appeal:
Section 3.1(e) Pricing
AMI acknowledges that, in addition to the securing of the highest quality health care for the citizens of York County, a major objective of York County in entering into this Agreement is that such care be provided on a cost-effective basis at prices favorably comparable to those paid for similar services provided by comparable acute-care hospitals in the same general geographical area. . . . Both parties understand that cost-effective, competitive pricing for services provided at the Hospital is essential to the provision of quality health care services to the citizens of York County, to the continuing economic well being of the Hospital and to the ability of AMI to meet its obligations hereunder.  AMI agrees to exert every effort to so conduct its operations and finances to maintain prices for services at the Hospital at reasonable, competitive levels vis a vis other hospitals in the peer group . . . . In the event such pricing information shall show that the average charge per case by the Hospital for All Product Lines is the highest in the peer group, AMI shall, within twelve (12) months following the delivery of such information to York County, present to York County, and implement a plan reasonably expected to fix or reduce its costs and/or charges for services such that the average charge per case for All Product Lines at the Hospital will be less than the highest in such peer group.  If such average charge remains the highest in the peer group at the end of the second Medpar reporting period following the reporting period which first showed the Hospitals having the highest average charge, AMI shall not increase any charges for services at the Hospital until such time as there have been delivered to York County reports . . . which show the Hospitals average charge per case for All Product Lines being less than the highest of the peer group.
Section 4.2 Remedies on Default

(a) Whenever any event of default . . . shall have happened and be subsisting, York County make (sic) take whatever action at law or in equity may appear necessary or desirable to enforce performance and observance of any obligation, agreement or covenant of [Respondents] under this Agreement.
(b) Whenever any event of default described [in specific sections of the Addendum] shall have happened and be subsisting, York County shall, in addition (sic) any remedy available to is (sic) pursuant to subsection (a), above, have the right . . . to purchase the Hospital.

(emphasis added).  Importantly, section 5 of the Sixth Addendum ratified and confirmed those sections of the 1980 contract not expressly modified by the addendum.  
Atherton and the other class members received medical services at Piedmont Medical Center since the 1995 date of the Sixth Addendum.  For each service rendered by the Hospital, Atherton entered into agreements entitled Consent for Treatment and Conditions of Admission.  These agreements included a provision in which Atherton individually obligates [himself] to pay the account of the hospital in accordance with the regular rates and terms of the hospital and physicians.  
In his complaint, Atherton asserts: For the last several years, the hospital charges for Tenet and Amisub have been the highest in the group of 10 peer hospitals in the region . . . .  Atherton alleges that York County entered into the agreement to directly benefit the citizens and residents of York County and that they were the intended beneficiaries of the agreement between York County and [Respondents].  He sets forth four causes of action:  (1) breach of third-party beneficiary contract; (2) unjust enrichment; (3) breach of implied contract for value of goods and services received; and (4) injunctive relief.  Respondents answered setting forth numerous defenses, including the defense that neither Atherton nor the purported class were third-party beneficiaries to the agreement and thus lacked standing to enforce the contract.  Additionally, Respondents filed a motion for summary judgment.  
Following a hearing on the matter, the trial court granted Respondents motion for summary judgment.  The court found that there were no third-party beneficiaries under the contract, at best the citizens of York County were incidental beneficiaries, and Atherton did not have a right to enforce the provisions of the contract.  The court held Athertons claim of unjust enrichment was barred because his assertion was based on an alleged breach of a contract, he asserted no legal duty or obligation upon which to base such a claim, and he was attempting to establish an additional remedy not provided for under the contract.  
The court went on to find neither South Carolina, nor any other jurisdiction, has recognized a cause of action for the breach of an implied contract for value of goods and services received, and even if it did exist, Athertons claim fails because his payments were covered by express contracts with the Hospital.  The court also concluded he was not entitled to injunctive relief.  Finally, the court held all four of Athertons claims would require the court to engage in legislative rate-making in order to determine damages, in violation of the separation of powers doctrine, and Respondents were entitled to summary judgment on this basis as well on all four causes of action.  This appeal followed.
STANDARD OF REVIEW
In reviewing the grant of a summary judgment motion, this court applies the same standard which governs the trial court:  summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c), SCRCP; Baughman v. Am. Tel. & Tel. Co., 306 S.C. 101, 114-15, 410 S.E.2d 537, 545 (1991).  In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the non-moving party.  Strother v. Lexington County Recreation Commn, 332 S.C. 54, 61, 504 S.E.2d 117, 121 (1998).  On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below.  Osborne v. Adams, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).
LAW/ANALYSIS
Atherton contends the trial court erred in granting summary judgment in favor of Respondents on his four claims.  We disagree.
I.       Breach of Third-Party Beneficiary Contract
Atherton contends the trial court erred in finding the agreement between Respondents and York County clearly and unambiguously precluded third-party beneficiaries.  He argues the Sixth Addendum modified the 1980 contract such that it now allows for enforcement of its provisions by citizens of the county.  He maintains, in the alternative, the agreement is at least ambiguous as to whether the citizens of York County are third party beneficiaries such that summary judgment was improper.  We disagree.
South Carolina contract law carries a presumption that an individual who is not a party to a contract lacks privity to enforce it.  Trancik v. USAA Ins. Co., 354 S.C. 549, 553, 581 S.E.2d 858, 861 (Ct. App. 2003) (citing Touchberry v. City of Florence, 295 S.C. 47, 48-49, 367 S.E.2d 149, 150 (1988)).  [I]t is to be observed that the presumption is that parties contract for their own benefit, and not for that of others not parties to the contract.  Ancrum v. Camden Water, Light & Ice Co., 82 S.C. 284, 295, 64 S.E. 151, 155 (1909).  Generally, one not in privity of contract with another cannot maintain an action against him in breach of contract, and any damage resulting from the breach of a contract between the defendant and a third party is not, as such, recoverable by the plaintiff.  Bob Hammond Constr. Co. v. Banks Constr. Co., 312 S.C. 422, 424, 440 S.E.2d 890, 891 (Ct. App. 1994).  The presumption is sustained that a contract made by a public entity is made on behalf of the public at large, and not for the benefit of the individual citizens.  Ancrum, 82 S.C. at 295, 64 S.E. at 155.  However, the presumption may be overcome if the intent of the parties to the contract was to provide the third-party a direct benefit, rather than an incidental or consequential one.  Id. at 424, 440 S.E.2d at 891; Cothran v. Rock Hill, 211 S.C. 17, 20, 43 S.E.2d 615, 616-17 (1947).  In addition, a municipality or other public entity may enter into a contract which allows for enforcement by an individual citizen if the parties so intended such enforcement and provided for the relief sought by the third-party.  Ancrum, 82 S.C. at 295, 64 S.E. at 155; Peeples v. South Carolina Power Co., 166 S.C. 150, 156-58, 164 S.E. 605, 607-08 (1932).
The cardinal rule of contract interpretation is to ascertain and give legal effect to the intentions of the parties, as determined by the contract language.  Schulmeyer v. State Farm Fire & Cas. Co., 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003).  Courts are without authority to alter a contract by construction or to make new contracts for the parties, and words cannot be read into a contract which impart an intent wholly unexpressed when the contract was executed.  Gilstrap v. Culpepper, 283 S.C. 83, 86, 320 S.E.2d 445, 447 (1984).  When a contract is unambiguous a court must construe its provisions according to the terms the parties used; understood in their plain, ordinary, and popular sense.  Schulmeyer, 353 S.C. at 134, 579 S.E.2d at 495.
In the instant case, there is no indication the parties intended to provide individual citizens with the right to enforce the contract or to hold Respondents liable to individual citizens for a breach of the contract.  The 1980 contract specifically and explicitly excludes third-party beneficiaries from the contract.  In section 16.15 of the contract, it specifies [t]here are no third party beneficiaries of this agreement.  Although the 1995 Sixth Addendum has provisions for pricing such as section 3.1(e) that may provide a consequential benefit to individual citizens of York County, the addendum does nothing to change the parties express intention to prohibit third-party beneficiaries.[4]  The addendum fully adopts and ratifies the unmodified portions of the 1980 contract, which includes section 16.15 limiting third-party beneficiaries.  
Further, unlike Peeples, which is relied on by Atherton, default provision section 4.2 of the Sixth Addendum provides for specific remedies reserved to York County alone.  The public contract in Peeples [did] not expressly provide the consequences of a breach, so as to exclude other consequences.  Peeples, 166 S.C. at 158, 164 S.E. at 607.  As noted in Ancrum, whenever parties to a contract stipulate in the contract the consequences of a breach of the agreement, if the stipulation is reasonable, it is controlling and excludes other consequences.  Ancrum, 82 S.C. at 297, 64 S.E. at 156.  Neither section 4.2, nor any other proviso in the contract or addendum, provide for individual rights of enforcement or remedies in the event of a breach.  Rather, the contract in question fixed and limited the consequences of any breach by Respondents, and as noted by the trial court, the court cannot add to the contract by imposing other and additional consequences.  Id.  As the contract specifies a remedy, and reserves that remedy exclusively to York County, we find this case clearly distinguishable from Peeples.  Accordingly, we find the agreement between the parties is unambiguous and the parties did not intend to allow Respondents to be liable to individual citizens of York County.  Therefore, the trial court properly granted summary judgment to Respondents on Athertons claim for breach of contract. 
II.      Unjust Enrichment
Atherton asserts the trial court erred in granting summary judgment on its claim for unjust enrichment.  He maintains the claim is not required to be based upon a legal duty owed by Respondents and is not rooted in his claim for breach of contract.  We find the court properly granted summary judgment on Athertons claim for unjust enrichment.
 Quantum meruit, quasi-contract, and implied by law contract are all equivalent terms for invoking an equitable remedy.  Myrtle Beach Hospital, Inc. v. City of Myrtle Beach, 341 S.C. 1, 8, 532 S.E.2d 868, 872 (2000).  Our Supreme Court has noted:  we used the terms quantum meruit, quasi-contract, and contract implied by law as equivalent terms, to distinguish those situations where equity would aid recovery from those where law provided the remedy, that is, express contracts or contracts implied in fact.  Id.  In a law action, the measure of damages is determined by the parties agreement, while in equity, the measure of the recovery is the extent of the duty or obligation imposed by law, and is expressed by the amount which the court considers the defendant has been unjustly enriched at the expense of the plaintiff.  Id. (quoting United States Rubber Products, Inc. v. Town of Batesburg, 183 S.C. 49, 190 S.E. 120 (1937)).
To prevail on a quantum meruit/quasi contract/implied by law claim, the plaintiff must establish the following elements:  (1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value.  Id. at 8-9, 532 S.E.2d at 872.  It should be noted, however, [i]f the tasks the plaintiff is seeking compensation for under a quantum meruit theory are encompassed within the terms of an express contract which has not been abandoned or rescinded, the plaintiff may not recover under quantum meruit.  Swanson v. Stratos, 350 S.C. 116, 122, 564 S.E.2d 117, 120 (Ct. App. 2002) (citing with approval 66 Am. Jur. 2d Restitution and Implied Contracts § 81 (2001)) ([I]t is a defense to an action in quantum meruit that there is an express contract covering the issue of compensation for services or materials furnished.).
Atherton contends the trial court erred in ruling he could not maintain a claim for unjust enrichment based on an alleged breach of contract.  He asserts he is not prohibited from maintaining an unjust enrichment claim by the agreement between York County and Respondents because he is not a party to that contract.  While the order of the trial court appears to be referring to the agreement between York County and Respondents when it sets forth the law that one cannot recover for unjust enrichment where an express contract exists, this is due to the fact Atherton couched his complaint as relying on this agreement to show Respondents were unjustly enriched.  Specifically, in asserting his unjust enrichment claim, Athertons allegations in entirety are as follows:

53.  Defendant wrongfully charged the Plaintiff and every other person similarly situated to the Plaintiff when it insisted upon a price for medical services which was in excess of the highest amount of any hospital in the 10 member peer group as agreed to by contract with York County.  The defendants have paid the money for charges which were in abrogation of the agreement with York County and, thus, Tenet and Amisub have been unjustly enriched.
54.  Plaintiff is individually entitled to judgment in their (sic) favor against the Defendants in the amount of all charges by Piedmont Medical Center that were in excess of the highest amount of any hospital in the 10 member peer group, plus reasonable interest, and each person in a class of persons similarly situated is entitled to judgment in their (sic) favor against the Defendants in the amount of all charges by Piedmont Medical Center that were in excess of the highest amount of any hospital in the 10 member peer group.

Thus, Atherton has based his claim for unjust enrichment on the agreement between York County and Respondents.  As previously noted, this express contract precludes any recovery by Atherton as a third-party beneficiary under the contract.  Clearly, as noted by the trial court, Atherton is merely attempting to reframe his breach of contract action as an action for unjust enrichment.  
At any rate, we find in the instant case there are other express contracts, which cover the issue of the amount paid by Atherton to the Hospital in exchange for its medical services, that preclude Athertons claim for unjust enrichment.[5]  Atherton signed consent agreements in which he agreed to pay the account of the hospital in accordance with the regular rates and terms of the hospital and physicians.  He cannot now claim recovery under an implied contract when he and the Hospital each performed under an express contract which was neither abandoned nor rescinded.  
Finally, even if we went beyond the issue of express contracts covering the issue of compensation for services furnished, Athertons claim must fail.  In Pitts v. Jackson Natl Life Ins. Co., 352 S.C. 319, 574 S.E.2d 502 (Ct. App. 2002), Pitts sued Jackson National asserting, in part, a claim for unjust enrichment based on the insurance companys failure to issue a preferred policy instead of a standard policy on his daughter, because his daughter qualified for the preferred policy, which charged lower premiums than the standard policies of equal face value.  This court noted the elements that a plaintiff must establish in order to recover for unjust enrichment; i.e. that there be (1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value.  Id.  at 339, 574 S.E.2d at 512.  We found that there was no benefit conferred upon the insurance company that would be unjust for the company to retain.  Id.  As in Pitts, there simply is no benefit conferred upon Respondents that would be unjust for Respondents to retain.  Atherton entered into commercial transactions with Respondents whereby he agreed to pay the hospitals and physicians regular rates in exchange for services rendered to him.  There is no allegation the Hospital was unjustly enriched by taking more than its regular rates, only that it took more than was allowed in the contract between Respondents and York County.  If Atherton were allowed to recover on this basis, it would expose Respondents to individual liability on a contract that we have found expressly prohibits individual recovery.  Accordingly, we find the trial court properly granted Respondents motion for summary judgment on Athertons claim of unjust enrichment. 
III.    Implied Contract for Value of Goods and Services Received
Atherton maintains the trial court erred in finding no cause of action for breach of an implied contract for value of goods and services received may be sustained.  We disagree.
Atherton maintains this cause of action is merely a reverse quantum meruit cause of action in which someone who pays too much for a service is entitled to a refund of the amount overpaid.  However, as stated above, a plaintiff may not recover under a quantum meruit cause of action where there is an express contract covering the issue of compensation.  Swanson v. Stratos, 350 S.C. at 122, 564 S.E.2d at 120.  Atherton entered into express contracts with the Hospital to pay at the regular rates for the services rendered.  When he paid the rate charged, he performed under the contract.  
Additionally, Atherton admits this specific cause of action has not been a recognized cause of action.  We have found no jurisdiction adopting liability for breach of the implied contract for value of goods and services received and Atherton fails to cite any case which analyzes and/or adopts such a cause of action in South Carolina or any other state.  In spite of this lack of precedent, Atherton maintains the court should fashion an equitable remedy.  However, we find Atherton properly contracted for the services and paid for the services based upon the consent agreements with the Hospital.  There is no need to create a new cause of action in equity when the contracts between Atherton and the Hospital expressly cover the issue of payment.
Atherton asks this court, however, to declare the consent agreements void for indefiniteness because the consent agreements fail to properly set forth the price terms.  Atherton relies on Doe v. HCA Health Servs. of Tenn., Inc., 46 S.W.3d 191 (Tenn. 2001) for the proposition that where the price is not set but only states the patient assumed liability for charges not paid by insurance, the contract is unenforceable for indefiniteness.  However, in Doe, the patient refused to pay the amount billed when it was presented, and instead filed suit seeking to determine a reasonable rate.  Id. at 194-95.  In the instant case, the record indicates Atherton paid the amount billed by the Hospital.  Therefore, there was a meeting of the minds regarding the price and nothing in the record indicates otherwise.  
Finally, we have determined Atherton cannot meet the elements necessary in order to recover for unjust enrichment.  Because Atherton maintains this cause of action is simply a reverse quantum meruit cause of action, this cause of action fails on that basis as well.  Accordingly, we find the trial court properly granted summary judgment on Athertons claim of breach of the implied contract for value of goods or services received.
IV.    Injunction
Atherton asserts the trial court erred in ruling he was not entitled to injunctive relief.  We disagree.
The remedy of injunction is a drastic one and should be cautiously applied only when legal rights are unlawfully invaded or legal duties are willfully or wantonly neglected.  LeFurgy v. Long Cove Club Owners Assn, Inc., 313 S.C. 555, 558, 443 S.E.2d 577, 578 (Ct. App. 1994).  In his complaint, Atherton asserts he is entitled to an injunction enjoining Respondents from seeking fees in excess of that allowed by provisions of the Sixth Addendum to the contract between York County and Respondents.  The trial court correctly determined Atherton is attempting to enforce, by way of an injunction, a contract that he has no legal right to enforce.  As discussed above, the contract between York County and Respondents allows enforcement by York County and provides the relief allowed.  Based upon our holdings above, we find no reason in equity to impose an injunction on Respondents.  Accordingly, we find the trial court properly granted summary judgment to Respondents on Athertons request for injunctive relief.
CONCLUSION
We find the trial court properly determined Atherton was not a direct third-party beneficiary under the contract between York County and Respondents and therefore has no right of enforcement.  We also find Atherton was not entitled to recover under a theory of unjust enrichment or the unprecedented theory of a breach of an implied contract for value of goods or services received.  Finally, we hold Atherton was not entitled to injunctive relief in seeking to require Respondents to abide by the terms of the contract or addendum.  Accordingly, we find the order of the trial court granting summary judgment to Respondents on all of Athertons claims is
AFFIRMED.[6]
GOOLSBY, HUFF, and KITTREDGE, JJ., concur.

[1]For purposes of this appeal, the class allegations are irrelevant.  
[2]National Medical Enterprises subsequently acquired American Medical and thereafter changed its name to Tenet Healthcare Corporation.  
[3]The replacement hospital is Piedmont Medical Center, which Respondents still operate as of the time of this action.  
[4]While the Sixth Addendum provides it was entered in part to ensure the continuing provision of high quality, cost effective healthcare to the citizens of York County, this provision merely expresses the intention to benefit the public at large.  We note the 1980 contract also was generally entered into in order to provide certain benefits to the citizens of York County as a whole.  Indeed, one provision of the 1980 contract expressly requires Respondents to provide an ambulance service at no charge to the county to meet the needs of all citizens of York County. . . .  However, the Agreement specifically excludes third-party beneficiaries. 
[5] This court may affirm pursuant to any ground appearing in the record on appeal.  See Rule 220(c), SCACR ( The appellate court may affirm any ruling, order, or judgment upon any ground(s) appearing in the Record on Appeal.).
[6]Based on our determination the trial court properly granted summary judgment on each of the individual causes of action, we need not address Athertons assertion the trial court committed error in determining Respondents were entitled to summary judgment collectively as to all four causes of action because Athertons claims would require the court to engage in legislative rate-making in order to determine damages, in violation of the separation of powers doctrine.