0789

Dr. Kevin R. JOHNSTON, Respondent-Appellant v. Dr. Alec E. BROWN, Appellant-Respondent.

(348 S. E. (2d) 391)

Court of Appeals

*Charles B. Bowers*, Columbia, *for appellant-respondent.*

*John E. Duncan* and *Joseph M. Fullwood*, Lexington, *for respondent-appellant.*

Heard June 17, 1986.

Decided Sept 2, 1986.

BELL, Judge:

This case arises from the failure of the parties to form a partnership for the practice of dentistry. Kevin R. Johnston, a recent dental school graduate, worked in the established dental practice of Alec E. Brown from 1978 to 1982 when he left to develop his own practice because the parties were unable to come to terms on a partnership agreement. Johnston then sued Brown for damages for unlawful detention of his dental equipment and patient records and in quantum meruit to recover the value of services rendered to Brown from 1980 to 1982. The jury returned a verdict for Johnston for $7,500 actual and $10,000 punitive damages for the unlawful detention. It also awarded Johnston $19,000 in quantum meruit for his services. The trial judge ordered a new trial nisi as to punitive damages unless Johnston remitted all but $2,000 in punitive damages. Johnston refused to accept $2,000 in punitive damages. Brown appeals the judgment on both causes of action. Johnston cross appeals the granting of a new trial nisi on punitive damages. We affirm the judgment for unlawful detention of the dental equipment and patient records and the granting of the new trial nisi. We reverse the judgment on the quantum meruit claim.

Johnston graduated from dental school in 1977. For approximately a year he practiced dentistry on his own. In August 1978, Brown persuaded Johnston to join him in his practice, established in 1965. For the first two years they practiced together under an agreement pursuant to which Johnston was paid 45% of gross fees collected from his patients less a deduction for laboratory fees. Brown paid all overhead for Johnston's practice, including the salary for his dental assistant. Johnston viewed the first two years as a "test period," after which the parties would decide whether to form a partnership. He testified that for the first two years "things went pretty smooth."

Upon expiration of the two year period, the parties began discussing formation of a partnership. They had a "gentlemen's understanding" that until the partnership agreement was concluded Brown would continue to pay Johnston according to the same formula they had agreed on for the first two years. It is undisputed that Johnston received full compensation under this formula for the services he rendered from August 1980 to August 1982.

From August 1980 to March 1982 Brown came forward with no concrete proposals for the partnership. Negotiations started in earnest in the spring of 1982, but by May 1982 the parties reached an impasse over two issues. Brown proposed a partnership in which Johnston would have a 25% interest; he also insisted his wife should continue working in the practice as the receptionist with a right to participate in the retirement plan. Johnston refused to agree to either of these points. He wanted a 50% interest in the partnership and, because Johnston did not get along with Mrs. Brown, he wanted Brown to fire her. It was then, in May 1982, that Johnston decided to leave Brown. In August 1982 he left to set up his own practice.

According to Johnston's testimony, he brought about $5,000 worth of dental equipment with him when he joined Brown's practice in 1978. He claimed Brown returned only two-thirds of this equipment to him when he left the practice and that much of it was broken on its return.

He also testified that on his last day of work he went to retrieve his patient files and discovered them missing. When he confronted Brown, he was told, "I'm sorry, you don't have

any charts." After about three months, the parties' lawyers worked out an arrangement for division and transfer of the files, which was embodied in a *pendente lite* order of the court. Johnston estimated he lost $21,000 during the first seven months of his practice because he did not have complete records on his patients.

## I.

We first address the issues relating to the claim for unlawful detention of Johnston's dental equipment and patient files.

## A.

At the close of Johnston's evidence, Brown moved for a nonsuit on the unlawful detention cause of action on the ground that there was insufficient evidence of damages to send the claim to the jury. The trial judge denied the motion. Brown takes exception to his ruling.

Generally, in order for damages to be recoverable, the evidence should enable the court or jury to determine the amount thereof with reasonable certainty. While neither the existence nor amount of damages can be left to conjecture, guess or speculation, proof with mathematical certainty of the amount of loss is not required. *Whisenant v. James Island Corporation*, 277 S. C. 10, 281 S. E. (2d) 794 (1981). Where it is reasonably certain that damage has resulted, mere uncertainty as to the exact amount will not preclude the right of recovery. *Jones v. Thomas and Hill, Inc.*, 265 S. C. 66, 216 S. E. (2d) 871 (1975). As the Supreme Court stated in *Powers v. Calvert Fire Insurance Company*, 216 S. C. 309, 321, 57 S. E. (2d) 638, 644 (1950):

> [P]erplexity attending the determination of the question and amount of damages rarely, if ever, defeats a cause of action. In such cases courts ordinarily depend upon the wisdom and fairness of the good men and true who compose the jury. . . .

This is especially true where the wrongdoer creates the situation that makes proof of the exact amount of damages difficult. *Id.* In such cases, the degree of proof necessary to

make a reasonable estimate of damages is relaxed in favor of the injured party. *Id.*

On a motion for a nonsuit the evidence must be viewed in the light most favorable to the plaintiff and if more than one reasonable inference can be drawn therefrom, the judge must submit the case to the jury. *Champion v. Whaley,* 280 S. C. 116, 311 S. E. (2d) 404 (Ct. App. 1984).

In this case, there was clearly evidence from which the jury could infer the fact of damage. Johnston testified that Brown detained his dental equipment and patient files thereby hampering his ability to treat patients and develop his own practice after he left Brown's employ. This testimony, if believed by the jury, was sufficient to prove the fact of damage. Obviously, both the equipment and the records had economic value to Johnston in pursuing his own practice.

Johnston testified at length regarding the problems he faced in treating his patients as a result of Brown's detention of his equipment and patient files. He estimated the loss to his practice at $3,000 a month for the first seven months. This testimony was sufficient to send the question of Johnston's damages to the jury. Given the existence of evidence on the issue of damages, the trial judge was correct in refusing the motion for a nonsuit.

### B.

Johnston takes exception to the granting of a new trial nisi on the issue of punitive damages on the ground that the judge improperly invaded the province of the jury as to the amount of punitive damages.

Where a verdict is deemed excessive by the trial judge, he has the power and the responsibility of either setting it aside absolutely or reducing it by granting a new trial nisi. *Gray v. Davis,* 247 S. C. 536, 148 S. E. (2d) 682 (1966). The granting of a new trial nisi for an excessive verdict is within the sound discretion of the trial judge. *Mylin v. Allen-White Pontiac, Inc.,* 281 S. C. 174, 314 S. E. (2d) 354 (Ct. App. 1984). Ordinarily his decision in such cases is not appealable and will not be reviewed or disturbed by an appellate court unless it clearly appears that the

exercise of his discretion was controlled by manifest error of law. *Gray v. Davis, supra.* The same law applies to verdicts for punitive damages. *See Norton v. Ewaskio,* 241 S. C. 557, 129 S. E. (2d) 517 (1963).

In this case, Johnston assigns no error of law to the judge's ruling. Instead, he asserts that the $10,000 punitive damages verdict was supported by evidence and was not such as to shock the conscience or indicate prejudice, passion, or other improper motive by the jury.

It is not necessary in reducing an excessive verdict by granting a new trial nisi that the judge find it to be so excessive as to indicate it was the result of prejudice, caprice, passion, or other consideration not founded on the evidence; it is enough if the judge deems the verdict to indicate undue liberality on the part of the jury. *Gray v. Davis, supra.* Since the granting of a new trial nisi on factual grounds is within the peculiar discretion of the trial judge, we are bound to defer to his ruling. *See South Carolina Department of Highways and Public Transportation v. Mooneyham,* 275 S. C. 205, 269 S. E. (2d) 329 (1980). We find no abuse of discretion on this record.

## II.

Brown also takes exception to the award of $19,000 in quantum meruit for the services Johnston rendered between 1980 and 1982. He contends Johnston received fair value for his services under the agreed compensation formula and is not entitled to any further recovery.

The undisputed testimony of Johnston and Brown shows they had an express agreement regarding Johnston's compensation from August 1980 to August 1982. Johnston rendered the services agreed to and Brown paid him the agreed compensation for those services. In other words, both parties performed the contract. In these circumstances, it was error for the trial judge to deny Brown's motion for a directed verdict on the quantum meruit claim.

Ordinarily a plaintiff sues in quantum meruit because he had no agreement with the defendant concerning the compensation to be paid for his services. Under an implied contract, the plaintiff, because he had no agreement

as to the price for his services, is entitled to recover the fair value of the work and labor he performed for the defendant. *Braswell v. Heart of Spartanburg Motel*, 251 S. C. 14, 159 S. E. (2d) 846 (1968). However, if a person renders services pursuant to an express agreement and does not receive the agreed exchange, he may also, in some instances, recover the fair value of the services in quantum meruit. *Coens v, Marousis*, 275 Pa. 478, 119 A. 549 (1923). In both cases, restitution is awarded on the theory that the plaintiff conferred a benefit at the request of the defendant in the mutual expectation that it was to be paid for. If the defendant receives the benefit of the services without paying for it, he will be unjustly enriched.

■ This principle is plainly inapplicable to the present case, because Johnston received the agreed payment for his services. There is no unjust enrichment. Therefore, Johnston is not entitled to recover any additional money on a theory of restitution.

■ Even if we assume, as Johnston argues, that Brown breached an agreement to make him a partner,[1] the result is the same. Although Johnston alleges a contract in his pleadings, he elected to sue, not on the contract for his expectancy damages, but in quantum meruit for the fair value of the services already rendered. *Cf., Riddle v. George*, 181 S. C. 360, 187 S. E. 524 (1936) (complaint alleged matters as to a contract between parties, but cause of action was in quantum meruit, not on contract); *Coens v. Marousis, supra*. While a recovery may be had in quantum meruit for services fully performed under an express contract,[2] the plaintiff's recovery is limited to the amount the parties agreed should be paid for the services. *United States Potash*

---

[1] While it is clear both parties contemplated a partnership at some future time, there is no evidence they ever reached agreement on the essential terms for forming the partnership. Viewed in the light most favorable to Johnston, the evidence shows only that the parties pursued a course of negotiations regarding the partnership, not that they concluded an enforceable contract entitling Johnston to become Brown's partner, *Cf., W. E. Gilbert & Associates v. South Carolina National Bank*, 285 S. C. 421, 330 S. E. (2d) 307 (Ct. App. 1985). Johnston's appreciation of this point perhaps explains his decision to sue in quantum meruit rather than on a contract.

[2] *See Coens v. Marousis, supra* (where one is employed to render services and fully completes his contract and other declines to perform, suit may be brought and recovery had on a quantum meruit for services).

*Co. v. McNutt*, 70 F. (2d) 126 (10th Cir. 1984); *Atkins v. County of Barnstable*, 97 Mass. 428 (1867); *Higgins v. Desert Braemer, Inc.*, 219 Cal. App. (2d) 744, 33 Cal. Rptr. 527 (1963) (plaintiff who has rendered services agreed to may recover such sum as the services were worth, not exceeding the contract price). As it was undisputed that Johnston had already received the agreed compensation for his services, the trial judge should have directed a verdict for Brown on the quantum meruit cause of action.

For the reasons stated, we affirm as to the cause of action for unlawful detention of Johnston's dental equipment and patient files and reverse as to the cause of action in quantum meruit.

Affirmed in part; reversed in part.

SANDERS, C. J., and SHAW, J., concur.