1063

Earline STRICKLAND, Respondent v. COASTAL DESIGN
ASSOCIATES, INC., Appellant.

(365 S. E. (2d) 226)

Court of Appeals

*James B. Van Osdell* and *Cynthia Graham Howe, Van Osdell, Lester, Stewart, McCutchen & Brittain,* Myrtle Beach, *for appellant.*

*John R. Clarke,* North Myrtle Beach, *for respondent.*

Heard Nov. 11, 1987.

Decided Dec. 7, 1987.

GARDNER, Judge:

Earline Strickland (Strickland) brought this quantum meruit action for services rendered to Coastal Design Associates, Inc., (Coastal). Coastal denied liability on the theory that all of Strickland's services were performed under a written contract whereby Strickland was to receive a commission for sales; that no sales had been consummated and, therefore, Coastal owed Strickland nothing. From a jury verdict awarding damages to Strickland, Coastal appeals. We affirm.

Coastal argued on appeal that "Strickland is precluded from recovering from Coastal on a quantum meruit basis theory based upon an implied contract because the parties' express contract covers the same subject matter." We reject this argument because Strickland in effect alleged that Coastal rescinded or abandoned the written contract and the uncontradicted evidence shows that Coastal either rescinded or abandoned the written contract. Under these circumstances, as later discussed, Strickland was entitled to recover in quantum meruit; and we so hold.

Strickland has been a licensed realtor since 1979. Prior to her employment by Coastal, she worked with Thomas Realty in Cherry Grove, S. C. Jack Henry Talbert, Sr., (Talbert) and Robert Sawyer (Sawyer) were the principals of Coastal; they entered into a contract with Gylet Lewis (Lewis), the owner of property located on both sides of the inter-coastal waterway running through Horry County, S. C., to develop a condominium (or boatominium) project on Lewis's property. Talbert testified that "Bob Sawyer was supposed to supply the architectural engineering and I was supposed to supply the marketing and finance to develop the tract of land." Coastal first employed Thomas Realty as real estate agents to manage sales of the property. Lastly in February of 1982, Coastal employed Strickland as manager and sales agent for the property; on April 19, 1982, a written contract was entered into between Coastal and Strickland.

The written contract of employment, in essence, provided that Strickland was employed as manager and as exclusive sales agent for the project, which was designated as Coquina Harbor, and as compensation would receive specified percentages from sales of condominiums. The contract also provided:

COASTAL shall have the right to terminate this agreement upon thirty (30) days prior written notice to the MANAGER for unsatisfactory performance or for breach of the obligations imposed upon the MANAGER by this agreement. MANAGER shall have the right to terminate this agreement at any time upon thirty (30) days prior written notice to COASTAL. The right of MANAGER to any commissions that accrued prior to such notice, shall not be devested by the termination of this agreement.

Strickland proceeded to renovate the office and organize the business. She purchased supplies and equipment, including a computer, with her own money. She incurred unreimbursed expenses of several thousand dollars. The essence of her testimony is that she spent a total of 2,727 hours over a 14 month period on the project.

In November of 1982, Coastal entered into a written agreement with L & O Investment, a North Carolina Corporation, to develop Lewis's property located on the opposite side of the inter-coastal waterway but also referred to in the written instrument as being commonly known as Coquina Harbor. Strickland testified that she did not know of this contract until April of 1983; there is evidence of record that she was told about it as early as November 1982, when Coastal notified Strickland of the rescission or abandonment of her contract.

Strickland testified as follows:

A. Well, it was approximately April of '83. I was still working out at Coquina Harbor and Jack and Bob Sawyer came down from Wilmington to meet with Gylet. They called me into the meeting and told me that they had worked out a commitment with a new investor, L & O, and that they would be coming on and hiring their own management and that I possibly could go to

work with them if I wanted to contact them, but as far as they were concerned that, you know, that I would no longer be needed to work out there.

Q. So you were terminated by CDA?[1]

A. Yes, I was.

Q. Okay, at that point in time, were you told anything by either Mr. Talbert or Mr. Sawyer?

A. They told me that—

Q. When you say, they, who was that?

A. Mr. Sawyer and Mr. Talbert.

Q. Okay.

A. That they appreciated all the time that I had put in out there and they told me that, you know, that this is what it would take to make the project go on and that they would, as soon as they got paid, that they would pay me, you know, for my time, that I had spent out there.

Strickland's conduct thereafter supports the proposition that she considered the contract rescinded by mutual consent or at least an abandonment of the original contract. She telephoned several times to collect the money due her but to no avail. Whether the contract was rescinded or abandoned is of no consequence, however, because the applicable rule of law is the same in both cases.

■ The law is well settled in this nation that where an express contract has been rescinded or abandoned, one furnishing labor or materials in part performance may recover in quantum meruit unless the original contract remains in force. *See* 98 C. J. S. *Work and Labor Section* 31 (1957) and the many cases annotated therein. *See also* 66 Am. Jur. (2d) *Restitution and Implied Contracts* Section 83 (1973) (where the words waived, abandoned or ended are used with reference to this rule). We, therefore, reject Coastal's argument that a quantum meruit action is barred because the parties had entered into an express contract

---

[1] There is no evidence of record that Strickland was terminated as provided by the contract. The use of the word "terminated" by Strickland's lawyer was misplaced because the record clearly shows that Coastal simply contracted with L & O and thereby Strickland's contract was no longer viable.

because there is uncontradicted evidence that Coastal either rescinded or abandoned the written contract. And we so hold.

Coastal next argues that the trial judge erred in refusing it request to charge that a plaintiff cannot recover under quantum meruit based on an implied contract when an express contract exists between the same parties in reference to the same subject matter and further that the plaintiff is not entitled to compensation other than in accordance with the terms of the written contract. We find no error; this rule of law is inapplicable because the uncontradicted evidence shows that the express contract was either rescinded or abandoned by Coastal. And we so hold.

Coastal next argues that the trial judge erred by allowing in evidence testimony pertaining to money paid it by L & O after L & O took over the management and sales of the project. Coastal argues that this evidence was irrelevant. We disagree. Sawyer testified that Coastal failed in developing the project because, *inter alia*, "We didn't have the financial capacity to put construction money together. We thought Mr. Lewis did but it developed that he didn't." And Sawyer also testified with reference to the contract with L & O that it was entered into because "Mr. Lewis wanted to enter into an agreement with another [other than Strickland], with L & O for the other side of the harbor and in order to do that he had to settle up on this debt which was still owed for services rendered on that side of the harbor." The evidence that Coastal was paid by L & O was relevant to the purpose of the rescission or abandonment of the contract with Strickland. And we so hold. Moreover, any evidence that assists in getting at the truth of the issue in question is relevant and admissible unless because of some legal rule it is incompetent and the determination of the relevance of evidence is largely within the discretion of the trial judge. *Bankers Trust of South Carolina v. Bruce*, 283 S. C. 408, 323 S. E. (2d) 523 (Ct. App. 1984).

We find no merit to the remaining issues presented by Coastal on appeal.

For the reasons stated, the judgment below is affirmed.

Affirmed.

SANDERS, C. J., and LITTLEJOHN, A. J., concur.