564 S.E.2d 117

Stephen E. SWANSON, Respondent,

v.

John D. STRATOS and Milton D. Stratos, Both Individually and as Personal Representatives of the Estate of Demetros J. Stratos, Deceased; Delores M. Stratos; Lois E. Stephenson; Mary Griffin; and Debie Misoyianis, Defendants,

Of whom, John D. Stratos, Individually and as Personal Representative of the Estate of Demetros J. Stratos, Deceased; Delores M. Stratos; Lois E. Stephenson; Mary Griffin; and Debie Misoyianis are, Appellants.

No. 3487.

Court of Appeals of South Carolina.

Submitted April 8, 2002.

Decided May 13, 2002.

Paul Daniel Schwartz, of David & Schwartz, of Charleston, for appellants.

Philip G. Clarke, III, of Bleecker & Clarke, of Charleston, for respondent.

HOWARD, J.:

Stephen Swanson sued John D. Stratos, individually and as personal representative of the estate of Demetros J. Stratos; Delores M. Stratos; Lois E. Stephenson; Mary Griffin; and Debie Misoyianis (collectively, "the Stratos family") for breach of express contract, breach of implied contract, and quantum meruit seeking to recover $31,800 in commission on a sale of timber.[1] The master awarded Swanson $3,800 dollars on his quantum meruit claim against the Stratos family. Swanson filed a motion to alter and amend the judgment and was awarded $1,342.92 in costs. The Stratos family also moved to alter and amend the judgment asking the master to vacate the award to Swanson and enter judgment for them and to award attorney's fees and costs under the South Carolina Frivolous Civil Proceedings Sanctions Act. The master denied the motion. The Stratos family appeals. We reverse in part and affirm in part.

---

1. Swanson also sued Milton Stratos on these causes of action. The master granted Milton Stratos's motion for involuntary nonsuit on all causes against him. That ruling is unappealed, and he is not a party to this appeal.

## FACTS AND PROCEDURAL HISTORY

In February 1996, John Stratos and Milton Stratos, as representatives for their father's estate, hired Swanson, a licensed forester, to inventory and appraise the value of timber on a 561 acre tract of land owned by the estate and located in Cordesville, South Carolina.

As he appraised the timber, Swanson noticed the presence of a red-cockaded woodpecker, an endangered species. Federal regulations require protection of this endangered species, which complicated the appraisal and future sale of the timber. On April 30, 1996, Swanson offered to market the timber to find a buyer at a suitable price, in return for which he was to receive a commission of ten percent of the gross proceeds of the sale, less the twenty-five hundred dollars he had already received for appraising the timber. Swanson informed the Stratos family about the endangered species and his ability to resolve the issue with regulatory agencies in order to sell the timber.

Although the Stratos family and Swanson came to an oral agreement on April 30, 1996, the agreement was not reduced to writing except in a letter written by Swanson to the Stratos family on November 11, 1996. The November 11 letter described the terms of the sale and the duties Swanson had undertaken in selling the timber as follows:

> From March until our last meeting on November 8, 1996, I have done considerable work for the family in the following area: a number of meetings and phone calls with Westvaco and U.S. Fish & Wildlife Service biologists to resolve the Red–Cockaded Woodpecker issue; development of the Timber Sale Prospectus, continuing talks with prospective buyers in on-going marketing of the timber specified for sale in the Prospectus, marketing of the timber specified for sale in the Prospectus, work in progress on the Habitat Conservation Plan (H.C.P.) to enable you to sell timber on the 66 acre Block in 1997, and also three meetings with you as a group at Mrs. Stratos's house to keep all of you informed and to answer questions concerning the sale of timber. My fee of ten (10%) percent of the total proceeds from the Timber Sale covers my time in the **above duties** as well as the following. 1) continued marketing of sale to assure best

price, 2) when sale is consummated, I will assist in the development of the Timber Sales Contract to insure [sic] your interests are protected, 3) [l]ogging supervision to insure [sic] contract compliance, full accounting of tonnage cut and hauled, 4) inspections as necessary to determine the extent of natural regeneration, 5) coordination with various state and federal agencies to secure cost-share funds for replanting whatever portion of tract is necessary, 6) supervision and coordination of site-prep and planting contract crews until acreage cut is productive again, 7) completion of [the] H.C.P. in order to get the go-ahead for the sale of timber on the 66 acre tract, 8) any other family meetings or meetings with U.S. Fish & Wildlife personnel to complete [the] H.C.P.

(emphasis added).

Between April 30 and November 11, Swanson compiled a sales prospectus to market the timber. Included in the prospectus was a sixty-six acre area designated a reserved area for the red-cockaded woodpecker. At trial, Swanson presented records indicating the time he spent creating the set-aside. In support of his quantum meruit claim at trial, Swanson testified that he charged $100 an hour for these services if not included in a commission sales contract.

Although Swanson received several offers to purchase and log the timber, all fell short of Swanson's suggested selling price, and he advised the Stratos family to wait until they received an acceptable offer. When no adequate bids were received, the Stratos family declined to sign a portion of Swanson's letter that would have extended the listing past November 11. Subsequently, a timber buyer for Elliott Sawmilling Company purchased the timber for $318,000 in January 1997, after reviewing the paperwork involving the set-aside arranged by Swanson during his listing contract. Elliot's buyer learned of the timber from a friend of John Stratos and had neither received Swanson's prospectus nor had any contact with Swanson concerning the proposed sale during the listing period.

On October 7, 1997, Swanson filed his complaint, alleging breach of contract, breach of implied contract, and quantum meruit causes of action. Swanson sought to obtain ten per-

cent of the purchase price as his commission. The case was tried before a master-in-equity.

The master found an express contract was formed between the Stratos family and Swanson during the April 30 meeting and the terms of that contract were expressed in the November 11 letter. The master also found the contract terminated on November 11 and was not renewed. The master further found that Elliott Sawmilling relied upon Swanson's set-aside when purchasing the timber and awarded Swanson $3,800 in quantum meruit for his work.[2]

Swanson filed a motion to alter and amend the judgment and requested the award of court costs of $1,342.92. The Stratos family also filed a motion to alter and amend the judgment, asking the master to render judgment for them against Swanson and award them costs and attorney's fees under the Frivolous Civil Proceedings Sanctions Act. The master granted Swanson's motion and awarded costs of $1,342.92. The master denied the Stratos family's motions. The Stratos family appeals.

## LAW/ANALYSIS

### I. Quantum Meruit

■ The Stratos family argues the master erred when he awarded Swanson $3,800 in quantum meruit because the duties associated with the creation of the set-aside were included in the express contract. We agree.

■ To prevail on a quantum meruit claim the plaintiff must establish the following elements: 1) a benefit conferred by the plaintiff upon the defendant; 2) realization of that benefit by the defendant; and 3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value. *Myrtle Beach Hosp. v. City of Myrtle Beach*, 341 S.C. 1, 8–9, 532 S.E.2d 868, 872 (2000).

---

2. In arriving at this figure, the master multiplied the thirty-eight hours he found Swanson spent creating the set-aside by the $100 hourly rate Swanson testified he would have charged if not working for commission.

■■■ If the tasks the plaintiff is seeking compensation for under a quantum meruit theory are encompassed within the terms of an express contract which has not been abandoned or rescinded, the plaintiff may not recover under quantum meruit. *See* 66 Am.Jur.2d *Restitution and Implied Contracts* § 81 (2001) ("[I]t is a defense to an action in quantum meruit that there is an express contract covering the issue of compensation for services or materials furnished."); *cf. Strickland v. Coastal Design Assocs.*, 294 S.C. 421, 424, 365 S.E.2d 226, 228 (Ct.App.1987) ("The law is well settled in this nation that where an express contract has been rescinded or abandoned, one furnishing labor or materials in part performance may recover in quantum meruit unless the original contract remains in force."); *Johnston v. Brown*, 290 S.C. 141, 148, 348 S.E.2d 391, 395 (Ct.App.1986), *rev'd on other grounds*, 292 S.C. 478, 357 S.E.2d 450 (1987) ("While a recovery may be had in quantum meruit for services fully performed under an express contract, the plaintiff's recovery is limited to the amount the parties agreed should be paid for the services." (footnote omitted)). Furthermore, brokers are not entitled to payment of commissions for the efforts taken to sell when their efforts do not result in a sale. *Webb v. First Fed. Sav. & Loan Ass'n*, 300 S.C. 507, 512, 388 S.E.2d 823, 826 (Ct.App. 1989), *overruled in part on other grounds by Myrtle Beach Hosp.*, 341 S.C. at 1, 532 S.E.2d at 868.

> [A] broker is never entitled to commissions for unsuccessful efforts. The risk of failure is wholly his. The reward comes only with his success. That is the plain contract and contemplation of the parties. The broker may devote his time and labor, and expend his money with ever so much devotion to the interests of his employer, and yet if he fails, if without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions. He loses the labor and effort which was staked upon success. And in such event it matters not that after his failure and the termination of his agency, what he has done proves of use and benefit to the principal.

*Id.* at 512, 388 S.E.2d at 826 (quoting *Sibbald v. Bethlehem Iron Co.*, 83 N.Y. 378, 383 (1881)).

■ Here, the master ruled that a contract was formed according to the terms set forth in Swanson's November 11 letter and that the contract ended and was not renewed. That ruling was not appealed and thus is the law of the case. *Brading v. County of Georgetown*, 327 S.C. 107, 113, 490 S.E.2d 4, 7 (1997). The efforts that Swanson undertook to delineate and mark the set-aside for the red-cockaded woodpecker were contained within the terms of the express agreement as reflected by the November 11 letter, in which Swanson acknowledged that his compensation was to come from the proceeds of the sale of the timber. Swanson failed to sell the timber and the contract terminated. Therefore, Swanson is not entitled to collect in quantum meruit.

The master also awarded Swanson $1,342.92 in costs on his motion to amend or alter the judgment. In light of our decision to reverse the award of damages to Swanson on his quantum meruit claim, Swanson has not succeeded in any part of his lawsuit. Moreover, Swanson concedes in his brief that costs were improperly awarded. Therefore, the award of costs to Swanson is reversed. *See* S.C.Code Ann. § 15–37–20 (1976).

## II.   Frivolous Lawsuit Claim

■ The Stratos family argues that the master erred when he denied their motion to impose costs and attorney's fees against Swanson under the South Carolina Frivolous Civil Proceedings Sanctions Act ("the Act"). The Act provides that

[a]ny person who takes part in the procurement, initiation, continuation, or defense of any civil proceeding is subject to being assessed for payment of all or a portion of the attorney's fees and court costs of the other party if:

(1) he does so primarily for a purpose other than that of securing the proper discovery, joinder of parties, or adjudication of the claim upon which the proceedings are based; and

(2) the proceedings have terminated in favor of the person seeking an assessment of the fees and costs.

S.C.Code Ann. § 15–36–10 (Supp.2001). Section 15–36–20 provides that a party

must be considered to have acted to secure a proper purpose ... if he reasonably believes in the existence of the facts upon which his claim is based and

(1) reasonably believes that under those facts his claim may be valid under the existing or developing law; or

. . .

(3) believes, as an attorney of record, in good faith that his procurement, initiation, continuation, or defense of a civil cause is not intended to merely harass or injure the other party.

S.C.Code Ann. § 15–36–20 (Supp.2001).

A decision to award costs under the Act is one in equity. *Hanahan v. Simpson*, 326 S.C. 140, 156, 485 S.E.2d 903, 912 (1997). Accordingly, this Court may take its own view of the preponderance of the evidence. *Id.* Our supreme court has held that if a cause of action survives pre-trial motions to dismiss or a summary judgment motion and goes to the jury, the cause of action cannot be considered frivolous. *Id.* at 157, 485 S.E.2d at 912 ("Other courts ... hold that a party who survives pre-trial motions to dismiss and for summary judgment are not subject to sanctions after a trial on the surviving claims. The theory behind these cases is that if a case is submitted to the jury, it cannot be deemed frivolous." (citations omitted)).

In this case, Swanson's quantum meruit action survived the Stratos family's motion for nonsuit based upon the insufficiency of the evidence and was resolved upon the merits by the master. Also, in viewing the factors listed in section 15–36–20, we find that Swanson reasonably believed he had a claim against the Stratos family under existing case law. At the time Swanson filed the complaint, a legitimate question of fact existed as to whether the oral agreement between the parties on April 30 and the subsequent writing of those terms in the November 11 letter would be considered an express contract by the trial court. Therefore, the master's decision to deny the motion for costs and attorney's fees was proper.

## CONCLUSION[3]

For the foregoing reasons, the master's decision is **REVERSED IN PART AND AFFIRMED IN PART.**[4]

HEARN, C.J., and GOOLSBY, J., concur.

---

3. Because we reverse on the grounds above, we need not address the Stratos family's other issues on appeal.

4. We decide this case without oral argument pursuant to Rule 215, SCACR.