The BOLDT CO., d/b/a Oscar J. Boldt Construction, Plaintiff,

v.

THOMASON ELECTRICAL and American Contractors Indemnity Company, Defendants.

C/A No. 6:07–cv–00697–GRA.

United States District Court,
D. South Carolina,
Greenville Division.

Sept. 27, 2007.

John Edward Cuttino, Steven Wayne Ouzts, Turner Padget Graham and Laney, Columbia, SC, for Plaintiff.

Cheryl S. Kniffen, Robert D. Steinberg, Thompson and Slagle, Duluth, GA, Dewitte Thompson, Jeff B. Slagle, Thompson and Slagle, Norcross, GA, Thomas E. Dudley, III, Townes Boyd Johnson, III, Kenison and Dudley, Greenville, SC, for Defendants.

## ORDER

G. ROSS ANDERSON, JR., District Judge.

Before this Court for consideration is the Defendants' Motion for Partial Judgment on the Pleadings (the "Motion"). Having considered the pleadings, the briefs of the parties, and oral argument on the issues presented in the Motion, this Court finds that the Defendants' Motion is meritorious and GRANTS the Defendants' Motion for Partial Judgment on the Pleadings.

## I. FACTS

This litigation concerns the electrical subcontract work on two schools that were constructed in Greenville County, South Carolina: Pelham Road Elementary School and League Academy Middle School (the "Projects," or individually, the "Pelham Project" or the "League Project," respectively). Plaintiff Oscar J. Boldt Construction ("Boldt") was the general contractor for both Projects. Boldt en-tered into subcontract agreements with Defendant Thomason Electrical, Inc. ("Thomason") to do the electrical work on the Projects. Defendant American Contractors Indemnity Company ("ACIC"), a commercial surety, issued separate payment and performance bonds for each of the Projects naming Thomason as principal and Boldt as obligee (the "Bonds").

The allegations of the Complaint, taken as true for purposes of the Motion, include that Thomason defaulted in the performance of the Subcontracts, that Boldt asserted claims against the Bonds, and that ACIC refused to make payment.

The Complaint includes no fewer than eighteen claims against Thomason and its surety, ACIC. The Defendants have now filed this Motion for Partial Judgment on the Pleadings, pursuant to Fed.R.Civ.P. 12(c), seeking to dismiss: (1) Count Fourteen, which purports to state a common law cause of action, sounding in tort, for alleged "bad faith" of the surety ACIC; (2) all claims asserted by Plaintiff seeking to recover pursuant to the payment bond(s) issued by ACIC (included in Counts One through Ten and Count Twelve); (3) Count Fifteen, purporting to assert a cause of action for unjust enrichment and/or restitution; and (4) Count Seventeen, seeking a recovery of attorney's fees pursuant to S.C.Code Ann. § 38–59–40.

## II. STANDARD OF REVIEW

After the pleadings are closed, any party may move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). A Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings and operates in much the same manner as a motion to dismiss under Rule 12(b)(6). *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2nd Cir.1998). A motion for judgment the pleadings can only be brought after the pleadings are closed.

Fed.R.Civ.P. 12(c), *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Judgment on the pleadings is appropriate if, assuming the truth of all materials facts pled in the complaint, the moving party is nonetheless entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1989).

## III. LAW/ANALYSIS

### A. Bad Faith Claim

There is a split of authority from other jurisdictions that have considered whether a performance bond obligee should be able to bring a tort action for "bad faith" against a surety. *Compare Cates Const. Inc. v. Talbot Partners*, 21 Cal.4th 28, 980 P.2d 407, 86 Cal.Rptr.2d 855 (Cal.1999) (holding that an obligee may not recover in tort for a surety's alleged breach of the covenant of good faith and fair dealing in the context of a construction performance bond); *Great American Ins. Co. v. North Austin Mun. Utility Dist. No. 1*, 908 S.W.2d 415, 418–20 (Tex.1995); *Institute of Mission Helpers of Baltimore City v. Reliance Ins. Co.*, 812 F.Supp. 72 (D.Md. 1992); *Republic Ins. Co. v. Board of County Comm'rs of St. Mary's County*, 68 Md. App. 428, 511 A.2d 1136 (1986); *Barr/Nelson Inc. v. Tonto's, Inc.*, 336 N.W.2d 46 (Minn.1983); *with Transamerica Premier Ins. Co. v. Brighton School Dist.*, 940 P.2d 348 (Colo.1997) (holding a bad faith claim could be asserted due to the relationship between the surety and obligee); *Dodge v. Fidelity and Deposit Co.*, 161 Ariz. 344, 778 P.2d 1240, 1242–3 (1989); *United States for the use of Don Siegel Constr. Co., Inc. v. Atul Constr. Co.*, 85 F.Supp.2d 414 (D.N.J.2000); *Loyal Order of Moose, Lodge 1392 v. International Fidelity Ins. Co.*, 797 P.2d 622 (Alaska 1990); *K–W Indus. v. National Surety Corp.*, 231 Mont. 461, 754 P.2d 502 (1988); and *Szar-*

*kowski v. Reliance Ins. Co.*, 404 N.W.2d 502 (N.D.1987).

Where the jurisdiction of a federal court is invoked on grounds of diversity of citizenship, as in this case, the federal court must remain within the bounds of the substantive law of the subject state. *Angel v. Bullington*, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947). Accordingly, this Court must decide whether South Carolina has clearly aligned itself with either side of this issue to determine whether South Carolina law recognizes a bad faith tort claim against the surety on a performance contract bond.

Boldt argues that its claim in Count XIV for bad faith against ACIC is supported by South Carolina law, relying primarily on the South Carolina Supreme Court's decision in *Nichols v. State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 306 S.E.2d 616 (1983). In *Nichols*, the Court held that first party insured could bring a common law tort action for bad faith against its indemnity insurer, basing its holding on the importance of the public interest affected by the insurance business, the relative lack of bargaining power of the insured when choosing an insurance policy, and an individual insured's relative lack of position in relation to the insurer during the claim's process. *See id.* at 339–40, 306 S.E.2d at 619.

This Court is guided by the South Carolina appellate court decisions in which those courts have been urged to expand the reach of *Nichols* to actions not involving a traditional insurer and first party insured claimant. The case offering the most guidance is the South Carolina Supreme Court decision in *Masterclean, Inc. v. Star Ins. Co.*, 347 S.C. 405, 556 S.E.2d 371 (2001), the only South Carolina case to consider whether a bad faith claim can be asserted against a surety. In *Masterclean*, the principal on the bond asserted a

bad faith action against the surety, arguing that the *Nichols* rationale should be extended to include claims by principals against the surety for bad faith failure to pay a claim made against a performance bond. *Masterclean* presented an issue of first impression for the South Carolina appellate courts. *See id.* at 408, 556 S.E.2d at 374. Noting that decisions from states which had considered the issue had resulted in a split of authority, the South Carolina Supreme Court went into great detail to explain why, in light of the many important distinctions between suretyship and insurance, it would not recognize a common law tort action for bad faith against a performance bond surety. Those distinctions include:

1. South Carolina has consistently recognized that a surety bond is a financial credit product rather than an insurance product;

2. The surety has a "contractual" relationship with two parties who generally have a conflict, which requires the surety to balance those interests as it decides how to respond to a claim;

3. The form of the bond is generally provided by the obligee rather than the surety; and

4. The projects that sureties are asked to bond are typically those entered into by parties with commercial sophistication, relative parity of bargaining power and ample legal and technical advice to ensure their protection in the contractual documents. *Id.* at 409–13, 556 S.E.2d at 374–6.

█ Boldt argues that the decision in *Masterclean* is not determinative of this case because *Masterclean* should be limited to its facts to hold only that a principal cannot maintain an action against a surety for bad faith. This Court cannot agree. Although the *Masterclean* Court did offer the relationship between the principal and surety as an alternative reason why South Carolina would not allow the principal to

assert a bad faith cause of action against a surety, the primary rationale the *Masterclean* court offered for declining to extend *Nichols* was that the public policy reasons underlying *Nichols* were "either non-existent or less persuasive in the surety context." *Id.* at 412, 556 S.E.2d at 375.

This Court also finds persuasive the South Carolina appellate court decisions in *Rotec Services, Inc. v. Encompass Services, Inc.,* 359 S.C. 467, 597 S.E.2d 881 (S.C.App.2004) and *Charleston Dry Cleaners & Laundry, Inc. v. Zurich American Ins. Co.,* 355 S.C. 614, 586 S.E.2d 586 (2003). In *Rotec,* the Court of Appeals refused to recognize an implied covenant of good faith and fair dealing as an independent cause of action separate from the claim for breach of contract. Essentially, Boldt's claim against ACIC is that ACIC breached its contract (the bond) with Boldt by refusing to process its claim in an appropriate manner. In *Charleston Dry Cleaners,* the Supreme Court was asked to extend a *Nichols* cause of action to a non-traditional insurance relationship, the relationship between a first party insured and an independent adjuster and the adjusting company for which he worked. The Supreme Court of South Carolina refused to recognize such a cause of action. Accordingly, this Court finds in light of the *Masterclean, Rotec* and *Charleston Dry Cleaners* decisions that South Carolina has clearly aligned itself with those states which have refused to extend the common law bad faith tort actions against indemnity insurers to sureties. Defendants' Motion as to Count XIV of Boldt's Complaint for bad faith against ACIC is granted.

**B. Payment Bond Claims**

█ Defendants moved for judgment on the pleadings dismissing Boldt's claims in which Boldt seeks to recover on a direct cause of action arising out of the Payment

Bonds issued by ACIC. The claims are included in Counts One through Ten and Count Twelve of the Complaint. The bonds issued by ACIC constitute contracts that define the obligations of ACIC. "It is the duty of courts, not to write contracts, but to enforce them, giving their language its plain, ordinary and popular sense." *Heaton v. State Farm Mut. Auto. Ins. Co.*, 278 F.Supp. 725, 727 (D.S.C.1968). When the contract language is plain and capable of legal construction, that meaning alone will determine the instruments force and effect. *FDIC v. Prince George Corp.*, 58 F.3d 1041, 1046 (4th Cir.1995). In this case, the plain language of the subject contracts, the "Payment" Bonds, limits the class of potential claimants to those "having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both . . . ." Giving those words their ordinary meaning, a proper claimant can only be one who has contracted with the principal to provide labor or material to the principal.

The subcontract between Thomason and Boldt required Thomason to perform work on the Project at Boldt's direction—that is, to provide labor and material to Boldt. In exchange for that labor and material, Boldt contracted to pay Thomason for the labor and materials that Thomason incorporated into the project—not to sell labor or materials to Thomason. The crux of Boldt's claim is that Thomason was obligated to but failed to reimburse Boldt for unearned contract funds Boldt advanced to Thomason in expectation that Thomason would eventually repay Boldt as it completed its work. *See* Complaint, ¶¶ 16(d), 17(c), 24(d), 25(c). Other courts that have addressed this issue have ruled that loans for labor and materials do not render an obligee a proper claimant under a payment bond. *See, e.g., American Cas. Co. of Reading, PA v. D.L. Withers Constr. L.C.*, 204 Ariz. 382, 64 P.3d 210 (2003) (construing payment bond containing language to

that set forth in the payment bond at issue in this case); *Southwood Builders, Inc. v. Peerless Ins. Co.*, 235 Va. 164, 366 S.E.2d 104, 109 (1988).

Defendants' Motion, to the extent of Boldt's claims asserting a direct cause of action under the Payment Bonds, is granted.

## C. Unjust Enrichment/Restitution Claims

In Count XV of the Complaint, Boldt asserts a claim for restitution/unjust enrichment against its subcontractor Thomason. Boldt argues that it should be allowed to pursue this claim, as well as its breach of contract claim, against Thomason because under South Carolina law such a claim in an alternative to the traditional breach of contract claim and is not inconsistent. *Franke Associates v. Russell*, 295 S.C. 327, 368 S.E.2d 462 (1988). While parties are permitted under South Carolina law to pursue quasi-contractual claims when there is no valid contract between the parties, or there is some question as to whether the contract is enforceable or applies to the dispute, when the parties agree, as the parties agree in this case, that a valid and enforceable contract exists which covers the dispute between them, such a claim is superfluous. "It is a defense to an action in quantum meruit that there is an express contract . . . ." *Swanson v. Stratos*, 350 S.C. 116, 120, 564 S.E.2d 117, 122 (2002). The parties' consensus that a valid enforceable contract exists dictates that this Court should properly grant the Defendant's Motion as to the quasi-contractual claims set forth in Count XV. *See First Integrity Bank v. Ohio Cas. Ins. Co.*, 2006 WL 1371674 (D.Minn.2006); *Drs. Bethea, Moustoukas and Weaver, LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399 (5th Cir.2004) (applying Louisiana law); *Krause v. Forex Exchange Market, Inc.*, 12 Misc.3d

1192(A), 824 N.Y.S.2d 755 (2006); *Southwest Trinity Constructors, Inc. v. St. Paul Fire & Marine Ins. Co.*, 243 Neb. 55, 497 N.W.2d 366 (1993); *Edd Helms Elec. Contracting, Inc. v. Barnett Bank of So. Florida*, 531 So.2d 238 (Fla.Ct.App.3d 1988); *Strickland v. Coastal Design Assoc.*, 294 S.C. 421, 365 S.E.2d 226 (1987).

### D. Attorney's Fees Pursuant to S.C.Code Ann. § 38–59–40

Boldt contends that Count XVII of its Complaint properly states a claim against ACIC because ACIC and the bonds in dispute in this case fall within the purview of that statute. The pertinent language of S.C.Code Ann. § 38–59–40 provides:

(1) In the event of a claim, loss, or damage which is covered by a policy of insurance or a contract of a nonprofit hospital service plan or a medical service corporation and the refusal of the insurer, plan, or corporation to pay the claim within ninety days after a demand has been made by the holder of the policy or contract and a finding on suit of the contract made by the trial judge that the refusal was without reasonable cause or in bad faith, the insurer, plan, or corporation is liable to pay the holder, in addition to any sum or any amount otherwise recoverable, all reasonable attorneys' fees for the prosecution of the case against the insurer, plan, or corporation.

■ In *Masterclean*, the South Carolina Supreme Court recognized that commercial surety was included in aspects of the insurance code for regulatory purposes, and that inclusion of suretyship in the insurance title of the South Carolina Code for regulation purposes does not change the nature of suretyship or change the clear distinctions between suretyship and insurance. *Masterclean*, 347 S.C. at 410–2, 556 S.E.2d at 374–5. The statute relied upon by Boldt to support its claim to recover attorney's fees, § 38–59–40, applies to disputes involving "a claim, loss, or damage which is covered by a *policy of insurance or a contract of a nonprofit hospital service plan or a medical service corporation.*" S.C.Code Ann. § 38–59–40(1) (emphasis added). Reviewing that statute as a whole, and giving the words their practical, reasonable, and fair interpretation, this Court finds that the bonds in dispute in this case are not "a policy of insurance or contract of a non-profit hospital service plan or medical service corporation." *Floyd v. Nationwide Mut. Ins. Co.*, 367 S.C. 253, 626 S.E.2d 6 (2005).

An argument similar to Boldt's was rejected by the Fourth Circuit's decision in *Tomlinson v. Sentry Engineering & Constr., Inc.*, 777 F.2d 918 (4th Cir.1985), a case in which the Fourth Circuit applied South Carolina law. In that case, the obligee contended that the bond—which contained language that was more generous in the protections afforded the obligee than the disputed bond issued by ACIC—authorized recovery of attorney's fees. In upholding the district court's denial of attorney's fees, the Fourth Circuit held that South Carolina law as a general rule does not allow attorney's fees to be recovered as part of a bond claim absent a provision in the bond expressly allowing attorney's fees as an element of damage or a statute expressly authorizing attorney's fees. *Tomlinson*, 777 F.2d at 919. The bonds at issue do not authorize the recovery of attorney's fees nor do the bonds fall within the purview of § 38–59–40. Accordingly, this Court grants Defendants' Motion as to Count XVII of Plaintiff's Complaint.

THEREFORE, IT IS ORDERED that Defendants' Motion for Partial Judgment on the Pleadings, pursuant to Fed.R.Civ.P. 12(c), be GRANTED.

**IT IS SO ORDERED.**