794 S.E.2d 382

**ROSE ELECTRIC, INC., Appellant,**

v.

**COOLER ERECTORS OF ATLANTA, INC., Southern Produce, Inc., S2P, LLC, Certified Development Corporation of South Carolina, Senn Bros., Inc., Custom Concrete of Lexington, Inc., and James Dunlap d/b/a Dunlap Services, Defendants,**

**Of whom Southern Produce, Inc., and S2P, LLC, are the Respondents.**

**Appellate Case No. 2014–001633**
**Opinion No. 5444**

Court of Appeals of South Carolina.

Heard June 16, 2016
Filed September 28, 2016
Rehearing Denied December 29, 2016

426

William E. Booth, III, of Booth Law Firm, LLC, of West Columbia, for Appellant.

Jon Robin Turner, of J. Robin Turner, P.A., of Columbia, for Respondent S2P, LLC.

Kathryn M. Cook, of Myrtle Beach for Respondent Southern Produce, Inc.

LOCKEMY, C.J.:

In this dispute arising out of a construction project, Rose Electric, Inc. (Rose Electric) appeals the trial court's order finding for Southern Produce, Inc. (Southern) and S2P, LLC, (S2P) (collectively Respondents) arguing the trial court erred in (1) finding an expressed contract barred its recovery under the theory of quantum meruit; (2) finding Rose Electric did not establish the elements of its quantum meruit claim; (3) and failing to award Rose Electric damages.

## FACTS

Southern is in the business of processing produce for sale. In the fall of 2010, Southern leased a parcel of land from S2P in the new South Carolina Farmers Market in Lexington County. On October 27, 2010, Southern entered into a "flat fee, turnkey contract" with Cooler Erectors of Atlanta (Cooler Erectors) to construct a refrigerated processing center on the property.

During the first week of November 2010, Morris Teasley, the president of Cooler Erectors, contacted Homer Rose, the owner of Rose Electric, about subcontracting the electrical work on the Southern project. Cooler Erectors and Rose Electric worked on three other projects at the new Farmers Market prior to working on the Southern project. Rose Electric agreed to complete the work; however, Rose Electric and Cooler Erectors did not discuss a price for the Southern project.

During the project Southern asked Rose Electric to modify the plans and materials Rose Electric received from Cooler Erectors. Rose Electric agreed to make those changes.

Throughout the construction process, Southern paid Cooler Erectors $203,277.00 of the project's $213,385.00 contract price. However, Cooler Erectors did not pay Rose Electric. Eventually, Rose Electric filed a mechanics' lien on Southern's property. The statement of account attached to the mechanics lien claimed Rose Electric was owed $54,339.13 for the "Total Contract Price" and $10,755.39 for "Change Orders."

On May 20, 2011, Rose Electric filed its complaint alleging causes of action for foreclosure of its mechanics' lien, breach of contract, unjust enrichment, and quantum meruit. During opening statements, Rose Electric notified the trial court it would only be pursuing its equitable cause of action for quantum meruit.

The trial court issued its order finding for Respondents on January 30, 2014. The trial court found an expressed contract existed between Rose Electric and Southern for the change orders and between Rose Electric and Cooler Erectors for the original scope of work. The trial court recognized Rose Electric elected not to proceed on its contract claims; therefore, the trial court found for Respondents. The trial court found the existence of an expressed contract precluded Rose Electric from recovery under quantum meruit. In the alternative, the trial court found Rose Electric failed to establish the elements of quantum meruit because Southern paid all but $10,108.00 of the contract price to Cooler Erectors and offered to pay Rose Electric for the change orders and a prorated share of the retainage.

## STANDARD OF REVIEW

 Quantum meruit is an equitable doctrine to allow recovery for unjust enrichment. *Columbia Wholesale Co., Inc. v. Scudder May N.V.*, 312 S.C. 259, 261, 440 S.E.2d 129, 130 (1994). "When reviewing an action in equity, an appellate court reviews the evidence to determine facts in accordance with its own view of the preponderance of the evidence." *Boykin Contracting, Inc. v. Kirby*, 405 S.C. 631, 637, 748 S.E.2d 795, 798 (Ct. App. 2013).

## LAW/ANALYSIS

### a) Existence of a Contract

Rose Electric argues the trial court erred in finding an express contract between Rose Electric and Cooler Erectors for the scope of work under the original plans and between Rose Electric and Southern for the change orders because there was no assent to the price term of either agreement. We agree.

 "A contract is an obligation which arises from actual agreement of the parties manifested by words, oral or written, or by conduct." *Stanley Smith & Sons v. Limestone College*, 283 S.C. 430, 433, 322 S.E.2d 474, 477 (Ct. App. 1984). "If agreement is manifested by words, the contract is said to be express." *Id.*; *see also* 13 Am. Jur. 2d *Building & Constr. Contracts* § 5 (2009) ("Where the parties to a building contract have orally agreed to the terms of performance *and the price*, there is an express contract." (emphasis added)). "If [the contract] is manifested by conduct, it is said to be implied." *Stanley Smith & Sons*, 283 S.C. at 434, 322 S.E.2d at 477.

 "Certain terms, such as price, time and place, are considered indispensable and must be set out with reasonable certainty." *McPeters v. Yeargin Const. Co., Inc.*, 290 S.C. 327, 331, 350 S.E.2d 208, 211 (Ct. App. 1986); *see also Stanley Smith & Sons*, 283 S.C. at 434, 322 S.E.2d at 477 (noting price is an essential term in a construction contract). Even if the parties intend to be bound by an agreement, the absence of material terms renders the agreement unenforceable. *Stevens*

*& Wilkinson of S.C., Inc. v. City of Columbia*, 409 S.C. 568, 579, 762 S.E.2d 696, 701 (2014).

■ We find the trial court erred in finding an express contract between Rose Electric and Cooler Erectors and Rose Electric and Southern. The evidence presented showed each of the three parties intended to be bound to their agreements. Rose Electric began working prior to signing an agreement and Homer Rose testified, "We had previously done work for Cooler Erectors of Atlanta. We had completed three jobs, all of which we had been paid well. We had been paid on demand." However, Rose acknowledged Rose Electric did not have a written contract with Cooler Erectors, nor had the two parties agreed to a contract price. Rather, Rose Electric sent Cooler Erectors invoices based on the time and cost of materials used. No evidence was presented to support the trial court's finding that Rose Electric and Cooler Erectors manifested an agreement on the price of the electrical work required on the Southern project, which our courts require as an essential term in construction contracts. *See Stanley Smith & Sons*, 283 S.C. at 434, 322 S.E.2d at 477 (noting price is an essential term in a construction contract); *McPeters*, 290 S.C. at 331, 350 S.E.2d at 211 ("Certain terms, such as price, time and place, are considered indispensable and must be set out with reasonable certainty."). Therefore, the trial court erred in finding an express contract between Cooler Erectors and Rose Electric.

■ We also find the trial court erred in finding an express contract between Rose Electric and Southern. At several points during the construction, Dan Stocker, the general manager of Southern, requested Rose Electric modify the electrical plans to better accommodate Southern's anticipated uses. Specifically Southern requested Rose Electric include stainless steel disconnects rather than hard wiring in certain equipment, add a hand washer and water heater circuit, relocate an onion peeler station outside the building, install additional receptacles, and add additional lighting. According to Rose, Southern took responsibility for paying for these changes. However, the parties did not agree on the cost of those changes or the method by which those charges would be determined. In this case, the lack of a price term is fatal to the

existence of an express contract and the trial court erred in finding an express contract existed.

We acknowledge Rose Electric worked with Cooler Erectors on other projects at the new farmers market, and had been paid without signing a contract. Rose Electric also provided Cooler Erectors with a "proposal" after construction was complete detailing the amount of work Rose Electric completed. We also acknowledge Southern requested Rose Electric make certain changes to the electrical plans and accepted responsibility for any additional charges. This evidence supports the inference that Rose Electric, Southern, and Cooler Erectors intended to be bound by their agreements; however, the missing price term is fatal to finding an express contract where, as here, the parties are contemplating a construction project. *See Stevens & Wilkinson of S.C., Inc.,* 409 S.C. at 579, 762 S.E.2d at 701 (2014) (finding no contract existed though the parties intended to be bound by an agreement because the absence of material terms rendered the agreement unenforceable); *McPeters,* 290 S.C. at 331, 350 S.E.2d at 211 ("Certain terms, such as price, time and place, are considered indispensable and must be set out with reasonable certainty."); *Stanley Smith & Sons,* 283 S.C. at 434, 322 S.E.2d at 477 (noting price is an essential term in a construction contract).

### b) Quantum Meruit

 Rose Electric also argues the trial court erred in finding it could not recover under quantum meruit because it did not prove Southern unjustly retained a benefit without paying for its value. We agree.

 "[Q]uantum meruit, quasi-contract, and implied by law contract are equivalent terms for an equitable remedy." *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach,* 341 S.C. 1, 8, 532 S.E.2d 868, 872 (2000). In order to recover under the theory of quantum meruit, a plaintiff must prove: "1) a benefit conferred by the plaintiff upon the defendant; 2) realization of that benefit by the defendant; and 3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." *Swanson v. Stratos,* 350 S.C. 116, 121, 564 S.E.2d 117, 119 (Ct. App. 2002).

"Courts addressing a claim of unjust enrichment by a subcontractor against a property owner have typically denied recovery when the owner in fact paid on its contract with the general contractor." *Williams Carpet Contractors*, 400 S.C. at 326, 734 S.E.2d at 180 (quoting *Columbia Wholesale Co.*, 312 S.C. at 262–63, 440 S.E.2d at 131).

 Southern paid $203,277.00 to Cooler Erectors pursuant to its October 22, 2010 contract. The total contract price for the building was $213,385.00.[1] Southern retained $10,103 from the contract price because "the work contained within the scope of the contract had not been completed." On December 2 the walls were not painted, the doors were not painted, automatic door closers were not installed, and there were draining issues. However, Rose Electric's work had been completed.

The trial court found Southern paid over 95% of the contract price to Cooler Erectors and "ha[d] consistently stood ready to pay the prorated shares of the retainage." We agree with the trial court that it would be unjust to require Southern pay the entire $54,339.13 owed to Rose Electric by Cooler Erectors. Southern did withhold $10,103 from the purchase price. This was a benefit that Southern retained from the work performed by Rose Electric Southern did not pay for.

We find Southern's offer to pay Rose Electric a prorated share of the retainage creates a sufficient equitable remedy. A subcontractor that is owed a debt for labor or materials furnished and used in the erection of a building has a lien upon the building and the land to secure the payment due. S.C. Code Ann. § 29-5-10 (2007). "However, in no event shall

---

1. Rose Electric challenges the trial court's finding that the total cost of the project was $213,385.00, and that the architectural plans were included in the total project price. We recognize in an action in equity, this court may find the facts based on our own view of the preponderance of the evidence. *First Nat'l Bank of S.C. v. Soden*, 333 S.C. 554, 567, 511 S.E.2d 372, 379 (Ct. App. 1998). "However, we are not required to disregard the findings of the trial [court] who saw and heard the witnesses and was in a better position to judge their credibility." *Id.* Evidence supported both Rose Electric and Southern's respective position. We find the issue of whether the architectural plans were intended to be part of the contract price was an issue of credibility. Accordingly, we adopt the trial court's finding that the total contract price of the project included the architectural plans.

the aggregate amount of any liens on the improvement exceed the amount due by the owner." S.C. Code Ann. § 29–5–20 (2007). "In the event the amount due the contractor by the owner is insufficient to pay all the lienors acquiring liens as herein provided it is the duty of the owner to prorate among all just claims the amount due the contractor." S.C. Code Ann. § 29–5–60(A) (2007).

Of the $213,385.00 total price of the project, Southern paid Cooler Erectors $203,277.00. Southern retained $10,103 because "the work contained within the scope of the contract had not been completed." When Cooler Erectors abandoned the job site, two other sub-contractors filed mechanic's liens on the property to secure payment. Rose Electric's lien claimed it was owed $54,339.13 on the construction agreement, a concrete supplier claimed a lien of $14,528.20, and a plumber claimed a lien of $10,210.93. The three subcontractors' claims totaled $79,139.26.

Had Rose Electric proceeded with its mechanics' lien foreclosure action, it's recovery would have been limited to 68.74% of the retainage, totaling $6,948.24. However, Rose Electric abandoned its mechanics' lien cause of action prior to trial and proceeded only on it quantum meruit cause of action. While Rose Electric did not invoke the mechanics' lien statute as a theory for recovery, we find the statute provides a framework for determining what recovery is proper in quantum meruit cases involving construction contracts. Where, as here, a building owner has paid a general contractor a substantial amount of the contract price, we find the mechanics lien statutes, and their limitations, are a proper measure of the subcontractor's damages against the property owner in a quantum meruit action.

Furthermore, the mechanics' lien statutes do not distinguish between liens that settle prior to trial and those that continue to trial. Rather, "it is the duty of the owner to prorate among all just claims the amount due the contractor." § 29–5–60(A). Southern did that in this case. We find the trial court properly included all liens filed against Southern when considering the amount of the retainage to which Rose Electric was entitled. [2]

---

2. Rose Electric argues Southern should not be able to use their payments to Cooler Erectors as a defense to Rose Electric's quantum

A defendant is not relieved of its responsibility to pay for a benefit because the defendant offered to pay prior to trial. Here, Southern has retained $10,103 of the contract price, but has recognized the full benefit of Rose Electric's services. The trial court erred in finding Rose Electric could not prove Southern retained a benefit without paying for it to the extent of the retainage. Accordingly we reverse and direct the trial court to enter judgment for Rose Electric for $6,948.24—the amount of its prorated share of the retainage.

We also reverse the trial court's order denying Rose Electric recovery for the change orders. As previously noted, no express contract between Rose Electric and Southern existed in this case. The court's only discussion of the quantum meruit action based on the change orders was "Southern Produce has offered to pay Rose [Electric] $10,755.39 for the change orders per its verbal contract." Based on Southern's offer to pay for the change orders, the trial court found Rose Electric failed to prove Southern retained a benefit under conditions that make it unjust for it to retain the benefit without paying its value. As discussed previously, there is no authority to support the assertion that a defendant is relieved of its responsibility to pay for a benefit because the defendant offered to pay prior to trial. Rose Electric modified the electrical plans to better suit Southern's work process; Southern has realized the benefit of Rose Electric's services; and Southern has not paid for those services. *See Swanson*, 350 S.C. at 121, 564 S.E.2d at 119 (noting the elements of quantum meruit are: "1) a benefit conferred by the plaintiff upon the defendant; 2) realization of that benefit by the defendant; and 3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value"). We find Rose

---

meruit claim because Cooler Erectors was not a licensed general contractor in South Carolina. We disagree that Cooler Erector's status as an unlicensed general contractor prohibits Southern from relying on its payments to Cooler Erectors as a defense in this case. Section 40-11–370 of the South Carolina Code (2011) prohibits unlicensed contractors, like Cooler Erectors, from attempting to enforce a contract they entered into. That statute does not prohibit individuals who contract with unlicensed general contractors from alleging payment to those contractors as a defense to claims by subcontractors. We affirm the trial court's determination that Cooler Erector's status as an unlicensed general contractor is irrelevant to this case.

Electric is entitled to be paid the stipulated price for its work and remand to the trial court to enter judgment in the amount of $10,755.39 for those services.

We reverse and remand to the trial court to modify its judgment to include an award of damages to Rose Electric in the amount of $17,703.63 and to address Rose Electric's claim for prejudgment interest.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is **REVERSED AND REMANDED.**

WILLIAMS and MCDONALD, JJ., concur.